UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GARY CRUZ and CLAUDE PAIN, Individually
and on behalf of all others similarly situated,

                        Plaintiffs,

          -against-

T.D. Bank, N.A.,

                        Defendant.
------------------------------------------------------------x

10 Civ. 8026 (PKC)

MEMORANDUM
AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-17-14

CASTEL, U.S.D.J.

        Initially, the plaintiffs, Gary Cruz and Claude Pain, brought this putative class action against TD Bank, N.A. ("TD Bank") alleging that the bank had violated certain provisions of the Exempt Income Protection Act ("EIPA"), CPLR § 5222-a, and breached certain common law duties. This Court dismissed the complaint in its entirety concluding, insofar as is relevant here, that there is no private right of action under EIPA. Cruz v. TD Bank, 855 F. Supp. 2d 157 (S.D.N.Y. 2012) ("Cruz I"). The United States Court of Appeals for the Second Circuit certified two questions (described herein) to the New York Court of Appeals. Cruz v. TD Bank, N.A., 711 F.3d 261 (2d Cir. 2013) ("Cruz II"). Following the New York Court's response, the Second Circuit affirmed the dismissal of all claims but remanded to permit the plaintiffs to endeavor to plead new claims under sections 5239 and 5240 of the New York Civil Practice Law and Rules ("CPLR"). Cruz v. TD Bank, N.A., 22 N.Y.3d 61, 78 (2013) ("Cruz III"); Cruz v. TD Bank, N.A., 742 F.3d 520, 522-23 (2d Cir. 2013) ("Cruz IV").

        Plaintiffs have now moved to amend attaching an amended pleading asserting claims which are substantially similar to the dismissed EIPA claim but invoking sections 5239

and 5240 of the CPLR.  As will be explained, the Court denies the motion based upon the tendered pleading but will allow the plaintiffs to assert more narrowly tailored claims under section 5239 and 5240 that comport with the limited nature of the relief authorized under these two sections as interpreted by the New York Court of Appeals in Cruz III.

TD Bank urges that the plaintiffs cannot plead any claim that meets the amount-in-controversy requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). TD Bank asserts that the combined amount of all class members' claims does not exceed $5,000,000, exclusive of interest and costs.  If, pursuant to this Memorandum and Order, plaintiffs file a revised amended pleading alleging in good faith claims under sections 5239 and 5240 and an amount in controversy in excess of the jurisdictional threshold, then TD Bank may proceed, if it has a good faith basis for doing so, with a motion addressed to this Court's subject matter jurisdiction.

I.   BACKGROUND & PROCEDURAL HISTORY

Plaintiffs brought six claims against TD Bank, seeking relief under EIPA and common law claims of breach of fiduciary duty, fraud, negligence, unjust enrichment, and conversion.[1]  This Court granted TD Bank's motion to dismiss plaintiffs' amended complaint, holding that there was no implied private right of action under EIPA and that, as to each of the five common law claims, plaintiffs failed to state claims upon which relief could be granted. Cruz I, 855 F. Supp. 2d 157.

---

[1] This case was one of six simultaneously filed putative class action suits asserting identical claims under EIPA and New York common law against different banks.  Martinez v. Capital One Bank, N.A., 10 Civ. 8028 (RJS); Matin v. HSBC Bank USA, N.A., 10 Civ. 8029 (RWS); Acevado v. Citibank, N.A., 10 Civ. 8030 (PGG); Latimore v. Municipal Credit Union, 10 Civ. 8031 (DLC); Luciano v. Bank of America, N.A., 10 Civ. 8032 (CM).

Shortly after this Court issued Cruz I, in Martinez v. Capital One, N.A., 863 F. Supp. 2d 256 (S.D.N.Y. 2012), Judge Sullivan granted a defendant's motion to dismiss an amended complaint asserting identical claims against a different bank.  Martinez relied in part on Cruz I and dismissed plaintiffs' claims on substantially similar grounds.  Judge Sullivan found that EIPA did not provide an implied private right of action, though he noted that "there is nothing in the plain language of [EIPA] that prevents judgment debtors from invoking the procedures under Article 52 to ensure compliance by banks."  Id. at 264.

The Second Circuit heard appeals from Cruz I and Martinez in tandem.  Cruz II, 711 F.3d 261.  The Court certified two questions to the New York State Court of Appeals:

> [F]irst, whether judgment debtors have a private right of action for money damages and injunctive relief against banks that violate EIPA's procedural requirements; and second, whether judgment debtors can seek money damages and injunctive relief against banks that violate EIPA in special proceedings prescribed by CPLR Article 52 and, if so, whether those special proceedings are the exclusive mechanism for such relief or whether judgment debtors may also seek relief in a plenary action.

Id. at 271.  The New York Court of Appeals accepted the certified questions.  Cruz v. TD Bank, N.A., 21 N.Y.3d 906 (2013).  With respect to the first question, the Court of Appeals answered in the negative, agreeing that "a private right to bring a plenary action for injunctive relief and money damages cannot be implied from the EIPA . . . ."  Cruz III, 22 N.Y.3d at 78 (2013).  Regarding the second certified question, the Court of Appeals held that "a judgment debtor can secure relief from a bank arising from a violation of the EIPA in a CPLR Article 52 special proceeding . . . [a]nd our determination that the legislation created no private right of action compels the conclusion that the statutory mechanisms for relief are exclusive."  Id.

Following the New York Court of Appeals's ruling, the Second Circuit affirmed this Court's dismissal of plaintiffs' amended complaint.  Cruz IV, 742 F.3d at 522-23.  In light of

the New York Court of Appeals's holding that judgment debtors certain limited relief could be obtained through special proceedings under Article 52, the Second Circuit remanded the Cruz case to this Court with instructions to permit plaintiffs to move for leave to amend their complaint.  Id. at 523.  Plaintiffs have so moved.

II.     DISCUSSION

   A.  Denial of Leave to Amend Based on Futility

Rule 15(a)(2), Fed. R. Civ. P., provides that a party may amend its pleading with leave of the court, and that a "court should freely give leave when justice so requires."  "This permissive standard is consistent with our strong preference for resolving disputes on the merits."  Williams v. Citigroup, Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (citation and quotations omitted).  "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to prevent an amendment prior to trial.  Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87-88 (2d Cir. 2002) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  An amendment to a pleading is considered futile "if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  Id. at 88.

In opposing a grant of leave to amend, TD Bank raises an array of arguments.  It contends that plaintiffs' proposed amendment would be futile because no independent actions may be maintained under sections 5239 or 5240 of the CPLR, that plaintiffs' complaint may not be brought in federal court because of a venue provision in the CPLR, that plaintiffs' complaint is untimely, and that the court should abstain from hearing plaintiff's case under the Rooker-

Feldman doctrine, the Younger doctrine, and the Anti-Injunction Act.  They also urge that the amount-in-controversy requirement under CAFA cannot be met and, therefore, this Court lacks subject matter jurisdiction.  Because a determination of whether the amount-in-controversy requirement is met in this case can only be made once the contours of the claims are determined, the Court addresses those contours in the first instance.

>    1. Special Proceedings Under CPLR Sections 5239 and 5240 May Be Brought as Actions in Federal Courts.

Section 5221 of the CPLR, in extensive detail, identifies in which of the several state courts a special proceeding under Article 52 may be brought and also in which county.[2]  TD Bank argues that, by identifying specific state courts and specific counties where venue may lie, the section precludes a federal court from hearing proceedings under Article 52.

"A special proceeding is a creature of New York law with no federal analogue." S.E.C. v. Colonial Inv. Mgmt. LLC, 07 Civ. 8849 (PKC), 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010).  "A special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment, but the procedure is similar to that on a motion. Speed, economy and efficiency are the hallmarks of this procedure."  Id. (citing Alexander, Comment C401:1 (McKinney's N.Y. CPLR, 2010) (internal citations omitted)).  A "special proceeding," denominated as such, cannot be commenced in a federal court.  Rule 2, Fed. R. Civ. P. ("There is one form of action—the civil action."); compare CPLR § 103(b) ("All civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized.").

---

[2] Generally, section 5221(a) provides that "a special proceeding authorized by [Article 52] shall be commenced in" a city court, county court, district court, or supreme court "in a county in which the respondent resides or is regularly employed or has a place for the regular transaction of business in person."  The applicable type of state court is determined by the type of court that entered the judgment sought to be enforced through the special proceeding.

However, the underlying claim may be brought as an "action" in a federal court, provided there is an independent ground for federal subject matter jurisdiction. Special proceedings under Article 78 of the CPLR, another unique creature of New York law, have been heard in federal court where diversity jurisdiction exists. See, e.g., Casale v. Metro. Transp. Auth., 05 Civ. 4232 (MBM), 2005 WL 3466405, at *7 (S.D.N.Y. Dec. 19, 2005); Elite Med. Supply of New York, LLC v. State Farm Mut. Ins. Co., 13-CV-918-A, 2014 WL 823439 (W.D.N.Y. Mar. 3, 2014) ("Congress has never excluded disputes of the kinds within an Article 78 proceeding, or any similar state-law proceeding, from the subject matter jurisdiction of federal courts."); but see Cartagena v. City of New York, 257 F.Supp.2d 708, 710 (S.D.N.Y.2003); cf. Carver v. Nassau Cnty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013), as corrected (Sept. 27, 2013) ("We need not decide, however, whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision . . . .").

"State legislatures have no power to expand or contract federal diversity jurisdiction." Codos v. Nat'l Diagnostic Corp., 711 F. Supp. 75, 77-78 (E.D.N.Y. 1989) (collecting cases). "Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation." Chicago & N.W.R. Co. v. Whitton, 80 U.S. 270, 286, 20 L. Ed. 571 (1871). See also Casale at *6 ("The language in Article 78 quoted by defendants is equally unhelpful to their position. State law may direct that '[a] proceeding under this article shall be brought in [state] supreme court,' N.Y. C.P.L.R. § 7804, but this requirement has nothing to do with whether the proceeding falls within a federal jurisdictional statute. If such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of

the federal judiciary."). Accordingly, this Court concludes that where diversity jurisdiction is otherwise satisfied, an action under sections 5239 and 5240 of the CPLR may be heard in federal court.

          2.    <u>Sections 5239 and 5240 of the CPLR Provide Independent Causes of Action.</u>

TD Bank argues that special proceedings provided under sections 5239 and 5240 are merely "mechanisms" to support judgments and that such "mechanisms" do not provide for independent causes of action. In contast to sections 5239 and 5240, section 5225(a) of the CPLR provides a mechanism that apparently must be asserted within an existing action. But there is no persuasive support for that construction of sections 5239 and 5240.

Section 5239 provides that "any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." CPLR § 5239. It further sets forth a procedure for service of process in such a proceeding, and provides that such proceedings may be commenced "in the county where the property was levied upon, or in a court or county specified in subdivision (a) of section 5221." <u>Id.</u> As with section 5221, which specifies a state court venue in which an Article 52 special proceeding may be commenced, each of these provisions would be superfluous if a special proceeding could not be brought as a separate action. <u>See</u> David D. Siegel, General Commentary on Article 52, McKinney's CPLR Ch. Eight, Art. 52, Refs. & Annos. at 2 (2014) ("A special proceeding is the independent prosecution of a right . . . .); Alexander, Comment C5225:5 (McKinney's N.Y., CPLR, 5255). ("The special proceeding is an independent application, bearing its own caption, in contrast to the mere motion status given to the application when it is made against the judgment debtor under subdivision (a) [of CPLR section 5225].").

The Second Circuit's decision in Milgram v. Orthopedic Associates Defined Contribution Pension Plan, 666 F.3d 68 (2d Cir. 2011), does not require a different result. In that case, a defendant resisting the enforcement of a judgment entered by a federal court based on a federal cause of action under the Employee Retirement Income Security Act ("ERISA") argued that the district court could provide relief from the judgment pursuant to sections 5239 and 5240. Id. at 72. Rejecting this argument, the Court stated that "C.P.L.R. 5239 and 5240 are state procedural rules; they provide no substantive rights and therefore have no relevance to this proceeding in federal court." Id. at 78. The instant case is distinguishable from Milgram. Here, plaintiffs do not rely on a federal claim to support subject matter jurisdiction. Rather, their claims directly invoke certain substantive rights that the New York Court of Appeals has now confirmed exist under sections 5239 and 5240.

While sections 5239 and 5240 may continue to provide a procedural mechanism for relief under state law, the opinion in Cruz III makes plain that there is a substantive component to the two sections. Thus, in contrast to Milgram where the defendant sought to import state procedures to obtain relief from a federal judgment, the New York Court of Appeals has defined the cause of action under sections 5239 and 5240 and, under Erie principles, this Court must apply the authoritative pronouncement of New York law in a diversity action.

   3. Plaintiffs' Claims are Not Time-Barred, Nor Have Plaintiffs Engaged in Undue Delay.

TD Bank further argues that leave to amend should be denied because plaintiffs' complaint is untimely and because plaintiffs have engaged in undue delay. Arguing that plaintiffs' claims are untimely under Article 52 of the CPLR, TD Bank cites plaintiffs' failure to return exemption forms within the twenty-five day period specified in CPLR § 5222(a)(c)(5). This argument fails for three reasons. First and foremost, TD Bank has not identified any

- 8 -

connection between the twenty-five day deadline for judgment creditors to claim exemptions and the timeliness of an action under CPLR sections 5239 or 5240.  Second, plaintiffs have alleged that they never received the exemption forms that TD Bank was statutorily obligated to send to them, so TD Bank may not be heard to raise plaintiffs' failure to timely execute and return the same forms as a defense.  Third, another provision of the EIPA expressly provides that "[f]ailure of the judgment debtor to deliver the executed exemption claim form does not constitute a waiver of any right to an exemption."  CPLR § 5222-a(c)(5).

Neither section 5239 nor section 5240 sets forth any statute of limitations.  Section 5239 provides only that the special proceeding must be commenced "[p]rior to the application of property or debt . . . to the satisfaction of a judgment."  CPLR § 5239.  Section 5240 provides that a "court may at any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure."  Id. § 5240 (emphasis added).  See Cruz III, 22 N.Y.3d at 76 n.4 ("There is no concrete temporal limitation on initiation of a CPLR 5240 proceeding, which is largely equitable in nature, although such relief should be pursued within a reasonable time after the injury is incurred . . . .").  Under New York law, the statute of limitations for "an action for which no limitation is specifically prescribed by law" is six years.  CPLR § 213(1).

The Second Circuit remanded plaintiffs' case to this court with instructions to permit plaintiffs to move for leave to amend their complaint.  Just over six weeks after the Second Circuit's ruling, plaintiffs moved for such relief according to the schedule set by this Court.  There has been no undue delay or dilatory conduct by plaintiffs.  Accordingly, plaintiffs' claims will not be dismissed based on the grounds that they are barred by the statute of limitations or that plaintiffs have engaged in unwarranted delay.

### 4. Defendant's Abstention-Related Arguments Are Meritless.

TD Bank argues that this Court should abstain from hearing plaintiffs' claims based upon a grab-bag of abstention grounds: the Rooker-Feldman doctrine, the Younger doctrine, and the Anti-Injunction Act. Rooker-Feldman applies to a state court judgment following the conclusion of a state court proceeding, while both Younger and the Anti-Injunction Act apply to ongoing state proceedings. None of these grounds for abstention is applicable in this case.

Rooker–Feldman bars federal courts from exercising jurisdiction over claims by "state-court losers challenging state court judgments rendered before the district court proceedings commenced." Lance v. Dennis, 546 U.S. 459, 460 (2006) (per curiam) (citation and quotations omitted). The Second Circuit has held that four threshold factors must be established in order for the Rooker–Feldman bar to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)).

Rooker-Feldman has no application to the pending motion. Plaintiffs bring claims based on alleged violations of EIPA by TD Bank. Without support, TD Bank declares that all special proceedings under sections 5239 and 5240 are procedures for review of the underlying state court judgments. But plaintiffs seek remedies against TD Bank, not against any judgment creditors. TD Bank fails to explain how any of the relief sought by plaintiffs impacts any

existing state court judgment. Accordingly, this Court needs not abstain from hearing plaintiffs' claims based on the Rooker-Feldman doctrine.

TD Bank also asserts that abstention is warranted under both Younger v. Harris, 401 U.S. 37 (1971), and the Anti-Injunction Act. "Under Younger, federal courts, in the interest of comity, must abstain from enjoining pending state court criminal prosecutions and allow state courts to resolve pending matters within their jurisdiction." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004) (Sotomayor, J.). The Supreme Court recently reaffirmed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013). The only three recognized "exceptional circumstances" are the preclusion of federal intrusion into (1) ongoing state criminal proceedings, (2) certain civil enforcement proceedings, and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. TD Bank contends that plaintiffs' claims fall within the third circumstance based on an asserted interest of New York state courts in enforcing money judgments. But again, plaintiffs seek no injunctive relief against their judgment creditors whatsoever, nor does the injunctive relief they seek impact any New York state money judgments in any manner. Further, plaintiffs' claims are entirely based on a New York statute insofar as it regulates the conduct of banks. Allowing plaintiffs to obtain limited relief under sections 5239 and 5240 is consistent with the interests of the state of New York as articulated by its highest court in Cruz III.

TD Bank's invocation of the Anti-Injunction Act is misguided for similar reasons. This statute prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or

to protect and effectuate its judgments." 28 U.S.C. § 2283. TD Bank fails to identify any state court proceeding that plaintiffs seek to enjoin, stating without explanation that granting plaintiffs the relief sought would "essentially" enjoin New York state courts from enforcing their judgments. The argument is without basis or merit.

> B. Certain Limited Remedies Against Garnishee-Banks Have Been Recognized by the <u>New York Court of Appeals Under Sections 5239 and 5240.</u>

The Court now turns to consideration of the nature and scope of claims that may be brought against a garnishee-bank under sections 5239 and 5240. The New York Court of Appeals's decision in <u>Cruz III</u> answers nearly all of the questions raised.

In their proposed SAC, plaintiffs seek precisely the same relief sought under their previous amended complaint: compensatory, statutory, exemplary, and punitive damages; an "obey-the-law" injunction, restitution, disgorgement of TD Bank's unjust enrichment, and fees and expenses. Plaintiffs read the New York Court of Appeals's ruling as providing for the same relief in an action under sections 5239 and 5240 as plaintiffs sought under an implied right of action under EIPA; essentially, they have relabeled their claims. Plaintiffs' reading of the New York Court of Appeals's ruling is incorrect. Throughout its opinion, the New York Court of Appeals made plain that plaintiffs had no right to bring a plenary action against a bank for money damages. The provisions of EIPA were enacted "to use banks as a conduit for information . . . not . . . to subject banks to a new type of liability." <u>Cruz III</u>, 22 N.Y.3d at 76.

Drawing a distinction between special proceedings under Article 52 and the plaintiffs' claims in <u>Cruz I</u>, the New York Court of Appeals explained that "[t]he summary proceedings have the advantage of being swift and without procedural complexity—there is no basis to suppose that the legislature expected that injured judgment debtors would commence

complicated and lengthy plenary proceedings to vindicate their rights, such as the federal court actions plaintiffs brought here." <u>Id.</u> at 77. Thus, permitting plaintiffs to bring a plenary action against the garnishee-bank in pursuit of a broad range of remedies including compensatory and punitive damages and remedial injunctive relief would be inconsistent with the limited nature of the causes of action recognized by the New York Court of Appeals.

Plaintiffs have cited no reported instances since the enactment of Article 52 in 1962 in which a judgment creditor has successfully brought a claim for damages against a garnishee bank under sections 5239 or 5240. This is particularly notable because, although EIPA has only been in force since 2008, the exemptions it protects have been in force far longer. <u>See</u>, <u>e.g.</u>, CPLR § 5205; 42 U.S.C. § 407(a).

The New York Court of Appeals took care to set forth the types of relief available to a judgment debtor against a garnishee-bank under sections 5239 and 5240. Section 5239 provides that a court may "vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded." According to the Court of Appeals, under section 5239,

> if a judgment debtor believes that a bank has restrained assets in error in violation of the EIPA—meaning there is a controversy between the bank and the account holder over access or "rights" in the deposited funds—he or she can obtain a civil remedy, such as the release of any money unlawfully restrained, an injunction barring transfer of exempt property to the sheriff or judgment creditor, or reimbursement of any bank fees improperly charged.

22 N.Y.3d at 75-76.

These pre-transfer remedies are limited in scope and conform to the text of section 5239, which provides a means of expedited relief for a judgment debtor whose exempt assets have been wrongfully restrained. As the New York Court of Appeals explained, "[t]he point of [EIPA] was to help debtors notify banks of the presence of exempt funds in their

accounts in order to prevent those funds from being restrained in the first instance—not to create yet another opportunity for litigation on the back end after an improper restraint was imposed." 22 N.Y.3d at 76-77.  Each of the three forms of relief cited by the New York Court of Appeals is remedial in nature, aimed at undoing the effects of an improper account garnishment and restoring a judgment debtor to the position in which he or she would have been had the wrongful garnishment never taken place.  The remedies identified are not forward-looking, deterrence-oriented relief of the type sought by plaintiffs.  Plaintiffs' claims for punitive damages, exemplary damages, and an injunction requiring TD Bank to comply with the requirements of EIPA are precisely the "opportunity for litigation on the back end after an improper restraint was imposed" which the New York Court of Appeals foreclosed as against a garnishee-bank.  Id.

Limiting the scope of recoverable damages is also consistent with prior caselaw applying section 5239.  In Matter of Ziede v. Mei Ling Chow, 941 N.Y.S.2d 275 (2d Dep't 2012), a rare reported instance in which a court awarded "damages" under section 5239, the petitioner brought a special proceeding to determine her rights to money held by the Sheriff of the City of New York, to which a defaulting bidder at a judicial auction for the petitioner's property also claimed a right.  Id.  The Second Department affirmed the lower court's order directing payment to the petitioner of "the full amount of [the defaulting bidder's] bid on the subject property, with interest, less the amount of the deposit moneys paid over to the petitioner." Id.  No damages were awarded against the Sheriff, who was a stakeholder in a position analogous to the garnishee-bank.  In this regard, the award in Ziede is analogous to the relief that the New York Court of Appeals held available to a judgment debtor in the event of a wrongful garnishment: a judgment debtor may bring a special proceeding under section 5239 to determine his or her rights in allegedly exempt assets, and a court may order that the disputed funds be

released by the garnishee-bank to the judgment debtor.  No reported case has been cited in which compensatory or punitive damages have been awarded under section 5239 against a third-party garnishee or stakeholder.  As set forth by the New York Court of Appeals, under section 5239 the plaintiffs may recover from the garnishee-bank a release of moneys unlawfully restrained, an injunction barring transfer of the funds, and a refund of any fees improperly charged by the bank.

Turning to section 5240, the New York Court of Appeals explained that under that provision "[c]omparable relief would be available . . . even after the assets have been transferred to the judgment creditor; in that event, the judgment creditor could be joined as a party and the court could reverse the transfer by issuing an order 'denying' the execution and directing restitution by the judgment creditor."  Id. at 76.  A judgment debtor may thus pursue remedies against a judgment creditor under section 5240.  Therefore, where there has been a transfer of funds by a bank to a judgment creditor which includes improperly restrained exempt property, the judgment debtor's remedy is against the judgment creditor and not the garnishee-bank.

A successful proceeding against the judgment creditor holding the wrongfully transferred funds, together with an award of interest thereon, affords the judgment debtor complete relief with one exception.  The bank, itself, may have charged the judgment debtor fees, including administrative fees for the garnishment, fees for checks returned for insufficient funds, or fees for a low account balance.  If these fees would not have been incurred had the exemption been honored, then the judgment debtor may recover them against the bank under section 5240.

Accordingly, consistent with the opinion of the New York Court of Appeals, this Court holds that plaintiffs' available remedies under section 5239 against a garnishee-bank prior

to the improper transfer of exempt funds are limited, and include "the release of any money unlawfully restrained, an injunction barring transfer of exempt property to the sheriff or judgment creditor, or reimbursement of any bank fees improperly charged." Cruz III, 22 N.Y.3d at 75-76.  Available remedies under section 5239 do not include punitive or exemplary damages, "obey-the-law" injunctions, or disgorgement of unjust profits.  Once a transfer has been made, the judgment debtor's remedies under section 5240 lie against the judgment creditor, except that the judgment creditor may recover against the garnishee-bank any fees improperly charged to the judgment debtor.  These remedies expeditiously put judgment debtors whose accounts were wrongfully restrained back into the position in which they would have been had the restraint never been imposed.  They avoid the creation of "another opportunity on for litigation on the back end after an improper restraint was imposed," which the New York Court of Appeals has concluded was not the purpose of the legislation enacted.  22 N.Y.3d at 76-77.

    The Court further notes that with respect to plaintiffs' claims to recover wrongfully assessed fees, any such relief would be limited to fees attributable to TD Bank's violations of EIPA.  CPLR § 5232(f).  EIPA amended section 5205 of the CPLR to exempt $2,500 of funds in a judgment debtor's account if "reasonably identifiable" statutorily exempt payments were made to the account electronically or by direct deposit during the 45 days prior to the date on which a restraining notice was served on the bank.  Id. § 5205(l).  Section 5222 of the CPLR also prohibits restraint of an amount equal to two hundred forty times the greater of the state and federal minimum wage, regardless of the source of the funds; at the time the restraint was imposed, the protected amount was $1,740.  Id. § 5222(i).  Thus, under EIPA the maximum protectable amount of exempt assets is $2,500.

Here, at the time of the restraint, plaintiff Cruz had approximately $3,020.00 in his TD Bank account. The proposed SAC alleges that TD Bank charged Cruz an administrative fee associated with placing the restraint on his account of $125.00, and "overdraft fees in the amount of $140.00 associated with Plaintiff Cruz's checks that bounced after his accounts were restrained." (SAC at ¶ 13)  Because Cruz had more money in his account than the statutory maximum amount protectable under EIPA— $2,500—the $125.00 administrative fee would have been charged to his account even if the exempt funds had not been restrained; this is because $520.00 of non-exempt assets would have remained in the account even if the exemption had been properly honored. See CPLR § 5205(l). In contrast, plaintiff Pain alleges that he had $340.00 in his account at the time of the restraint, and that an administrative fee of $125.00 and overdraft fees of $35.00 were assessed. Accordingly, based on the facts alleged in the proposed SAC Cruz may not recover the administrative fee assessed on his account, while Pain may be able to recover the same.

### C. Subject Matter Jurisdiction

In their proposed second amended complaint ("SAC"), plaintiffs assert that this Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(d) and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (SAC at ¶ 7). The relevant provision of CAFA provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .

28 U.S.C. § 1332(d)(2).

CAFA allows aggregation of the claims of individual class members to reach the jurisdictional amount. 28 U.S.C. § 1332(d)(6). Plaintiffs asserting jurisdiction under CAFA "must show that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006) (citation and internal quotations omitted).

In light of the previously discussed limitations on remedies available under sections 5239 and 5240, this Court is unable to determine based on the parties' submissions whether plaintiffs have satisfied the $5,000,000 jurisdictional minimum under CAFA. In the event plaintiffs file an amended complaint consistent with this Memorandum and Order, defendants may move to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction.

CONCLUSION

For the foregoing reasons, plaintiffs' motion (Dkt. No. 33) for leave to amend to assert the claims in Exhibit 1 to the Koppell Declaration is DENIED without prejudice to filing an amended complaint consistent with this Memorandum and Order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 17, 2014