UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GARY CRUZ and CLAUDE PAIN, individually
and on behalf of all others similarly situated,

                            Plaintiffs,                         10-cv-8026 (PKC)

            -against-                      MEMORANDUM
                                                   AND ORDER

TD BANK, N.A.,

                           Defendant.
--------------------------------------------------------x

CASTEL, U.S.D.J.

          In an Order dated November 6, 2014, this Court directed that the judgment

entered for the defendant, TD Bank, N.A. ("TD Bank"), on March 5, 2012, should stand as

entered, and that the Clerk should close this case.  Plaintiffs Gary Cruz and Claude Pain now

move for vacatur of the judgment pursuant to Rule 60(b), Fed. R. Civ. P., and for leave to file a

Second Amended Complaint ("SAC").  For the following reasons, the motion is granted.


BACKGROUND

          The reader is directed to the Court's previous orders for a more detailed account

of the factual and procedural background in this putative class action brought under New York's

Exempt Income Protection Act ("EIPA"), N.Y. CPLR 5222-a.  In brief, the Court initially

granted TD Bank's motion to dismiss the plaintiffs' amended complaint, concluding that there

was no private right of action under the EIPA.  Cruz v. TD Bank, N.A., 855 F. Supp. 2d 157

(S.D.N.Y. 2012) ("Cruz I").  On appeal, following the certification of two questions to the New

York Court of Appeals, Cruz v. TD Bank, N.A., 711 F.3d 261 (2d Cir. 2013) ("Cruz II"), and the

New York Court's response, <u>Cruz v. TD Bank, N.A.</u>, 22 N.Y.3d 61 (2013) ("<u>Cruz III</u>"), the Second Circuit affirmed the dismissal, but remanded to permit the plaintiffs to plead new claims under CPLR 5239 and 5240.  <u>Cruz v. TD Bank, N.A.</u>, 742 F.3d 520, 522–23 (2d Cir. 2013) ("<u>Cruz IV</u>").  The plaintiffs moved for leave to amend, and this Court denied the motion without prejudice to filing an SAC that asserted more narrowly tailored claims consistent with the New York Court of Appeals's reading of CPLR 5239 and 5240.  <u>Cruz v. T.D. Bank, N.A.</u>, 2014 WL 1569491 (S.D.N.Y. Apr. 17, 2014) ("<u>Cruz V</u>").  The plaintiffs next moved for reconsideration, and on June 3, 2014, the Court granted reconsideration in part, enlarging the scope of relief that the plaintiffs could seek in their SAC.  <u>Cruz v. T.D. Bank, N.A.</u>, 2014 WL 2506292 (S.D.N.Y. June 3, 2014) ("<u>Cruz VI</u>").

There then ensued a five-month interval during which the plaintiffs made no attempt to file an SAC.  Their counsel did, however, seek leave to file amended pleadings in two related actions that were similarly affected by the <u>Cruz III</u> decision.  <u>See</u> Motion for Leave to File a Second Amended Complaint, <u>Acevado v. Citibank, N.A.</u>, No. 10-cv-8030-PGG (S.D.N.Y. Aug. 1, 2014), Dkt. No. 73; Motion for Leave to File a Second Amended Complaint, <u>Martinez v. Capital One Bank, N.A.</u>, No. 10-cv-8028-RJS (S.D.N.Y. Sept. 15, 2014), Dkt. No. 50.

On November 6, the Court, noting that 150 days had elapsed since <u>Cruz VI</u>, ordered that "the Judgment for the defendant . . . stands as entered and the Clerk is directed to close the case."  (Dkt. No. 54.)  The plaintiffs then sent a letter to the Court requesting that the Court reopen this matter and permit the plaintiffs to file an SAC.  (Dkt. No. 55.)  On November 19, the Court granted leave for the plaintiffs to file a motion to vacate the judgment and for leave to file the SAC, but directed that the motion "should address whether [plaintiff's counsel] made the strategic decision to proceed in a timely fashion with the [related actions], but have this

action lag behind in order to avoid having this Court rule on any presented issues in advance of the other judges." (Dkt. No. 58.) Plaintiffs' motion under Rule 60(b) has now been fully briefed. (Dkt. Nos. 59, 62, 63, 66.)

DISCUSSION

I.      Motion to Vacate the Judgment

Under Rule 60(b)(1), Fed. R. Civ. P., a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" in case of "mistake, inadvertence, surprise, or excusable neglect." In Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993), the Supreme Court set out the framework for determining whether there has been "excusable neglect."[1] It rejected the view that a claim of "excusable neglect" is defeated upon "any showing of fault" on the part of the movant. Id. at 388. Holding that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," it laid out the factors a court should look to. Id. at 395. In the non-bankruptcy context, those include: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (quoting Pioneer, 507 U.S. at 395) (alterations omitted).

In the Second Circuit, the third Pioneer factor is the focus of a court's analysis. Padilla v. Maersk Line, Ltd., 721 F.3d 77, 83 (2d Cir. 2013). TD Bank argues that this factor

---

[1] Although Pioneer analyzed that term in the context of Bankruptcy Rule 9006(b)(1), which governs late filings of proofs of claim in Chapter 11 bankruptcy cases, subsequent Second Circuit decisions have applied the Pioneer framework in the context of motions under Rule 60(b)(1). See Padilla v. Maersk Line, Ltd., 721 F.3d 77, 83–84 (2d Cir. 2013); Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997).

favors denying the motion, and asserts that the plaintiffs "made the strategic decision to delay

filing the SAC in this civil action to avoid this Court's leadership on EIPA" (Opp'n 7), echoing

the doubts expressed by the Court in its November 19 order.  Indeed, this Court's conclusion in

Cruz I that there was no private right of action under the EIPA was subsequently adopted by

Judge Sullivan in the companion Martinez case.  Martinez v. Capital One, N.A., 863 F. Supp. 2d

256, 261 (S.D.N.Y. 2012).  On remand, Judge Sullivan once again adopted this Court's

reasoning in Cruz V and Cruz VI, holding that CPLR 5239 and 5240 provide for only limited

relief, "simply permit[ting] judgment debtors to halt or reverse the specific transactions that

violate the EIPA, and recover, where applicable, improperly charged bank fees."  Martinez v.

Capital One, N.A., No. 10-cv-8028(RJS), 2014 WL 4179866, at *5 (S.D.N.Y. Aug. 20, 2014).

In the Acevado case, Judge Gardephe quoted Cruz I at length and also agreed that there was no

private right of action under the EIPA for money damages.  Acevado v. Citibank, N.A., No. 10

Civ. 3080(PGG), 2012 WL 996902, at *6–9 (S.D.N.Y. Mar. 23, 2012).  The fact that plaintiffs'

counsel filed amended pleadings in Martinez and Acevado but failed to do so in this action could

easily be interpreted as an attempt to ensure that this Court was not the first to rule on any further

common questions that might arise in these cases.

        Plaintiffs' counsel vigorously dispute this, asserting that their failure to act

following Cruz VI was "an honest oversight" (Schreck Decl. ¶ 17), due instead to "the press of

other business including other cases involving the EIPA statute."  (Koppell Decl. ¶ 6).  In a

declaration made under penalty of perjury, Daniel Schreck, one of the plaintiffs' attorneys,

explains: "After [Cruz V and Cruz VI], the undersigned could locate no Court order or rule that

required submission of the proposed Second Amended Complaint in any specific timeframe.

Consequently, other matters pending at the time which had time limits, and other matters that

came in subsequently which also had time limits, were addressed prior to turning to the submission of a proposed Second Amended Complaint in this matter." (Schreck Decl. ¶ 4.) He denies any intent to frustrate the Court or to seek a strategic advantage, and devotes three pages to arguing that, in any event, there was no strategic advantage to be gained by delaying filing an SAC in this case. (Id. ¶¶ 8–17.) Schreck's colleague, Oliver Koppell, also claims that "[t]here was no tactical advantage to our clients or our firm for the delay. I had engaged in no discussions regarding such a tactic, nor had I even contemplated such a possibility." (Koppell Decl. ¶ 5.)

       In light of these representations, the Court is willing to accept that plaintiffs' counsel's failure to file an SAC was not willful, but was instead the result of what in New York State law is known as "law office failure." See CPLR 2005 (permitting courts "to excuse delay or default resulting from law office failure"). The fact that the time required to prepare an SAC in this case "was always trumped by other matters with deadlines" (Pl.'s Reply Mem. 2) may reflect poorly on plaintiffs' counsel's competence—especially because pleadings very similar to that which the plaintiffs now seek to file in this action were already prepared in Martinez and Acevado (see Borenman Decl. Exs. A and B)—but that is a matter best addressed if and when the plaintiffs file a motion for class certification. Rule 23(g)(1)(A)(iv) & (g)(1)(B), Fed. R. Civ. P.

       TD Bank places great reliance on Padilla, in which the Second Circuit stated, without elaboration, that "a delay attributable solely to a defendant's failure to act with diligence cannot 'be characterized as "excusable neglect."'" Padilla, 721 F.3d at 84 (quoting Dominguez v. United States, 583 F.2d 615, 617 (2d Cir. 1978)). The Court, however, does not read this statement as modifying the standard under Pioneer. "Diligence" is "[t]he attention and care

- 5 -

required from a person in a given situation." Black's Law Dictionary 552–53 (10th ed. 2014).

Lack of diligence is thus equivalent to negligence. See id. at 553 (noting that Roman law

defined <u>diligentia</u> as the absence of <u>negligentia</u>); Thesaurus.com, http://thesaurus.com/

browse/diligence (last visited Jan. 12, 2015) (listing "negligence" as an antonym of

"diligence").[2] <u>Pioneer</u>, however, explicitly held that "'excusable neglect' is understood to

encompass situations in which the failure to comply with a filing deadline is attributable to

negligence." <u>Pioneer</u>, 507 U.S. at 394; <u>see also</u> <u>Canfield v. Van Atta Buick/GMC Truck, Inc.</u>,

127 F.3d 248, 250 (2d Cir. 1997) (quoting that holding in the context of a Rule 60(b) motion). It

is the requirement that the negligence be "excusable" that serves to deter parties from openly

ignoring deadlines. <u>Id.</u> at 395. <u>Padilla</u>'s stipulation that a delay must not be attributable "solely"

to a lack of diligence simply restates that requirement: there must be a circumstance that renders

the lack of diligence excusable.

   In <u>Padilla</u>, the defendant sought in its Rule 60(b) motion to remove from the

plaintiff class fifteen seamen who, it belatedly discovered, were governed by a different

collective bargaining agreement, under which they would not be entitled to the relief given in the

judgment. The defendant could offer no reason for its failure to raise that argument earlier,

stating only that it had been "overlooked" during the two-year period following class

certification. That failure was thus not "excusable." Here, the plaintiffs argue that the failure to

file an amended pleading was "an honest oversight" (Schreck Decl. ¶ 17) resulting from "the

press of other business." (Koppell Decl. ¶ 6.) In that respect, it is similar to <u>Padilla</u>. But the

lack of a court-imposed deadline brings the case closer to <u>Pioneer</u>, in which the Supreme Court

---

[2] "Diligence" can also mean "[c]onstant application to one's business or duty; persevering effort to accomplish something undertaken." Black's Law Dictionary 552. In that sense, it is the opposite of "slothfulness" or "lethargy." Undoubtedly, a delay caused only by slothfulness or lethargy cannot constitute excusable neglect, but the Court does not find (and does not understand TD Bank to argue) that this is the case here.

found that bankruptcy creditors' failure to timely file proofs of claim was excusable, because the deadline had been "peculiar[ly] and inconspicuous[ly] place[d] . . . in a notice regarding a creditors' meeting," in a way that created a "dramatic ambiguity."  Pioneer, 507 U.S. at 398. The Pioneer Court was careful to emphasize that the creditors' counsel had, in fact, been "remiss in failing to apprehend the notice," id., and here, too, there is no doubt that, even without an explicit deadline, plaintiffs' counsel should have known that a reasonable period for filing the SAC had elapsed well before the end of their five months of inactivity.  The Pioneer Court nevertheless concluded that the bankruptcy court had abused its discretion in declining to find the neglect excusable, and this Court similarly concludes here that plaintiffs' counsel's lack of diligence does not preclude them from obtaining Rule 60(b)(1) relief.

    The remaining Pioneer factors all favor the plaintiffs.  TD Bank asserts that it would be prejudiced if the Court reopened this case, but makes no real attempt to explain how.  It also argues that the EIPA's purpose—"to provide immediate protection to low income judgment debtors" (Opp'n 8)—is frustrated by the plaintiffs' delay, but that purpose would be more drastically frustrated if the Court foreclosed the plaintiffs' potentially meritorious claims entirely. In any event, this action was filed over four years ago, and an additional delay of a few months has relatively little impact on judicial proceedings.  Finally, because the Court accepts plaintiffs' counsel's explanation for the delay, it finds no bad faith on their part.  Taking all the factors together, the Court concludes that the delay in filing the SAC was an instance of excusable neglect permitting it to vacate the judgment in TD Bank's favor.

II.     Futility of Leave to Amend

      A court "should freely give leave [to a party to amend its pleadings] when justice so requires."  Rule 15(a)(2), Fed. R. Civ. P.  Leave to amend may be denied, however, if the proposed amendment is futile—that is, "if the proposed claim could not withstand a motion to dismiss."  Lucente v. Int'l Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).  TD Bank argues that this is the case for the proposed SAC, first, because the plaintiffs have failed to allege all the essential elements of a claim under CPLR 5239, and second, because CPLR 5240 does not permit a new independent action.

      Under CPLR 5239, "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" (emphasis added).  According to TD Bank, this requires the plaintiffs to allege that TD Bank has not transferred the putative class members' funds to a judgment creditor.  The Court concludes, however, that the plaintiffs have adequately done so.  Their proposed SAC alleges that TD Bank "in some instances releas[ed] Plaintiffs' and the Classes' statutorily protected personal property to third party creditors" (Schreck Decl. Ex. B ¶ 1) (emphasis added), that "in numerous instances [TD Bank] subsequently transferred the funds to creditors" (id. ¶ 4) (emphasis added), and that "[i]n some instances, the funds were ultimately unlawfully transferred to judgment creditors."  (Id. ¶ 26) (emphasis added).  Drawing all reasonable inferences in favor of the plaintiffs, as the Court would have to on a motion to dismiss pursuant to Rule 12(b)(6), In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007), the Court reads these allegations as stating that the funds of at least some of the plaintiff class members were not transferred to creditors.  The SAC goes on to make this explicit by proposing

- 8 -

a separate class of account holders (the "5239 Class") "whose accounts have not been applied by a sheriff or receiver to the satisfaction of a judgment."  (Schreck Decl. Ex. B. ¶ 27.)

    To the extent that TD Bank asserts that the named plaintiffs do not have standing to assert the claims of the 5239 Class because they have not alleged that <u>their</u> funds were not transferred, the argument is unavailing.  "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  <u>NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.</u>, 693 F.3d 145, 162 (2d Cir. 2012).  At the motion to dismiss stage, no more is required.  Whether the named plaintiffs would adequately represent the interests of the 5239 Class is a separate question to be addressed at the class certification stage.  <u>See id.</u> at 165.

    TD Bank's second argument is premised on differences in the language of CPLR 5239 and 5240.  While the first allows a party to "commence a special proceeding," the second only permits a court, "on its own initiative or the motion of any interested person," to issue "an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."  TD Bank claims that CPLR 5240's reference to a "motion" presupposes the existence of an already existing case, and that this language, together with the rule's title—"Modification or protective order; supervision of enforcement"—presupposes the existence of a prior order in that case.  In <u>Cruz V</u>, however, this Court rejected TD Bank's contention that CPLR 5239 and 5240 were "merely 'mechanisms' to support judgments," which did "not provide for independent causes of action."  <u>Cruz V</u>, 2014 WL 1569491, at *4–5. Assuming that TD Bank is not simply inviting the Court to revisit that conclusion, TD Bank's

argument appears to be that the substantive rights that the New York Court of Appeals recognized exist under CPLR 5240 may be invoked in an action initiated under CPLR 5239, but not in a separate proceeding.  Presumably, this would make CPLR 5240 unavailable to any class members who were not part of the 5239 Class.

The New York Court of Appeals's opinion in Cruz III compels a different conclusion.  Cruz III explicitly states that, under the EIPA, "a judgment creditor who objects to an exemption claim must, in expedited fashion, initiate a CPLR 5240 proceeding to resolve the dispute."  Cruz III, 22 N.Y.3d at 75 (emphasis added); see also id. at 76 n.4 ("There is no concrete temporal limitation on initiation of a CPLR 5240 proceeding, which is largely equitable in nature." (emphasis added)).  The opinion characterizes CPLR 5239 and 5240, in the EIPA context, as bases for parallel causes of actions for different types of plaintiff.  Addressing the plaintiffs' argument that only a plenary action would provide them a means to seek redress for EIPA violations, the court explained that "nothing prevents a party injured in the manner alleged by plaintiffs from seeking redress against a bank in a CPLR 5239 or 5240 proceeding," id. at 75 (emphasis added), which suggests that either rule could provide the basis for a proceeding.  It went on to describe a CPLR 5239 proceeding and then noted that "[c]omparable relief would be available under CPLR 5240, even after the assets have been transferred to the judgment creditor."  Id. at 75–76.  TD Bank has offered no way to reconcile these authoritative pronouncements of New York law with its reading of CPLR 5240.

In any event, assuming arguendo that, as a technical matter, CPLR 5240 requires a preexisting action in which to apply, one exists here, because CPLR 5239 provides a basis for this action.

CONCLUSION

For the foregoing reasons, the plaintiffs' motion to vacate the judgment in this case is GRANTED, and their motion for leave to amend is GRANTED, without prejudice to TD Bank's right to raise the adequacy of class counsel in response to any motion for class certification.  Plaintiffs must file their SAC within seven days of the date of this Order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 3, 2015