UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GARY CRUZ and CLAUDE PAIN, Individually and
on behalf of all others similarly situated,

                    Plaintiffs,

                                                    Case No. 10-cv-08026 (PKC)

          -against-

TD BANK, N.A.,

                    Defendant.
----------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Law Offices of G. Oliver Koppell & Associates
Attorneys for Plaintiffs
99 Park Ave., Suite 1100
New York, New York 10016
212-867-3838

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Contents ............................................................... i

Table of Authorities ........................................................... iv

Preliminary Statement ......................................................... 1

History of the Case ............................................................ 3

Terms of the Settlement ........................................................ 6

    A.    Certification of a Class ............................. 6

    B.    Monetary Payments and Distribution of Settlement Funds ...... 6

    C.    Enhanced Access to EIPA Exempt Funds ...................... 7

    D.    Release of Claims .................................... 8

    E.    Administration of the Settlement ........................ 8

    F.    Class Counsel Fees and Incentive Awards ................... 9

Argument ..................................................................... 10

I.    Standard of Review ................................................... 10

II.    The Proposed Settlement Agreement is the Result of Arm's Length Negotiations ... 13

III.    The Requirements of Rule 23 are Satisfied ............................. 14

    a.    Numerosity .......................................... 14

    b.    Commonality ........................................ 15

    c.    Typicality ........................................... 16

    d.    Adequacy ........................................... 17

    e.    Predominance ........................................ 20

f.      Superiority                                                          20

IV.    The Proposed Notice Plan Should be Approved                           21

a.      Plaintiffs Do Not Believe That Publication Notice is Required        22

b.      The Class Notice Postcard is Adequate Notice                         23

Conclusion                                                                   2

# **TABLE OF AUTHORITIES**

Federal Cases                                                                                                    Page

Annunziato v. Collecto, Inc., 293 F.R.D. 329 (E.D.N.Y. 2013)                                                      15

Bourlas v. Davis Law Assocs., 237 F.R.D. 345 (E.D.N.Y. 2006)                                                     11

Chhab et al. v. Darden Restaurants, Inc. et al., 2016 WL 3004511                                                 11
   (S.D.N.Y. May 20, 2016)

Cohen v. J.P. Morgan Chase & Co., 262 F.R.D. 153 (E.D.N.Y. 2009)                                                 11

Corpac v. Rubin & Rothman, LLC, 920 F.Supp.2d 345 (E.D.N.Y. 2013)                                                22

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995)                                              14

Cruz v. TD Bank, N.A., 2015 WL 437393 (S.D.N.Y. Feb. 3, 2015)                                                    19

Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006)                                                          12

Dodona I, LLC v. Goldman, Sachs & Co., 296 F.R.D. 261 (S.D.N.Y. 2014)                                          15, 16

Flynn v. New York Dolls Gentlemen's Club, 2014 WL 4980380 (S.D.N.Y. Oct. 6, 2014)                              11, 12

Gonqueh v. Leros Point to Point, Inc., 2015 WL 9256932 (September 2, 2015)                                       12

Hadel et al. v. Gaucho, LLC, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016)                                            11

Hecht v. United Collection Bureau, Inc., 691 F.3d 218 (2d Cir. 2012)                                             23

In re Advanced Battery Technologies, Inc. Securities Litigation, 298 F.R.D. 171                                  23
   (S.D.N.Y. 2014)

In re Am. Int'l Grp., Inc. Sec. Litig. ("In re AIG"), 689 F.3d 229 (2d Cir. 2012)                               12

In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F.Supp.2d 935                                   23
   (N.D.Ill. 2011)

In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285 (2d Cir. 1992)                                             17

In re IndyMac Mortgage-Backed Securities Litigation, 286 F.R.D. 226 (S.D.N.Y. 2012)                              20

In re Initial Pub. Offerings Sec. Litig. ("In re IPO"), 471 F.3d 24 (2d Cir. 2006)                              20

In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124 (S.D.N.Y. 2008) 21

In re Mutual Funds Investment Litig., 2010 WL 2342413 (D.Md. May 19, 2010) 23

In re Nasdaq Market–Makers Antitrust Litig., 176 F.R.D. 99 (S.D.N.Y. 1997) 10, 11

In re Sony Corp. SXRD, 448 Fed.Appx. 85 (2d Cir. 2011) 10

In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001) 20

Joel A. v. Giuliani, 218 F.3d 132 (2d Cir. 2000) 10

Long v. HSBC USA Inc., 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) 11, 12

Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) 16

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072 (2d Cir. 1995) 12

Mazzei v. Money Store, 288 F.R.D. 45 (S.D.N.Y. 2012) 20

Passafiume v. NRA Grp., LLC, 274 F.R.D. 424 (E.D.N.Y. 2010) 10

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) 22

Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234 (2d Cir. 2011) 14

Sukhnandan v. Royal Health Care of Long Island LLC, 2013 WL 4734818 11
  (S.D.N.Y. Sept. 3, 2013)

Tiro v. Pub. House Invs., LLC, , 2013 WL 2254551 (S.D.N.Y. May 22, 2013) 11

Tsereteli v. Residential Asset Securitization Trust 2006-A8, 283 F.R.D. 199 16
  (S.D.N.Y. 2012)

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011) 15, 17

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) 12

Yuzary v. HSBC Bank USA, N.A., 2013 WL 1832181(S.D.N.Y. Apr. 30, 2013) 12

<u>Federal Statutes</u>

Fed.R.Civ.P. 23 passim

<u>Treatises</u>

Manual for Complex Litigation § 21.632 (4th ed.).                    10

Plaintiff Gary Cruz, individually and on behalf of all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's unopposed motion for preliminary approval of the settlement between Plaintiff and the putative Certified Class and defendant TD Bank, N.A., (the "Bank").

<u>Preliminary Statement</u>

After more than six years of hard fought litigation involving a case of first impression that has been before this Court on multiple motions, before the Second Circuit and before the New York State Court of Appeals, the parties have come to a resolution of this matter that Plaintiff believes to be fair and equitable.  The parties negotiated for more than nine months over the terms and condition of the settlement.

Plaintiff Cruz, along with the Plaintiff's in a related action Arthemio Perez and Wilfred Bucknor, brought suit against the Bank alleging violations of New York's Exempt Income Protection Act ("EIPA").  The Plaintiffs collectively alleged that restraints were imposed on exempt monies not eligible for restraint including through the aggregation of accounts, that mandatory disclosures were not provided to judgment debtors, that fees were imposed by the Bank that could not be lawfully imposed and that judgment debtors were denied access to their exempt funds in the ordinary course.  The Bank either denied these allegations as a question of fact or denied that the practices were violations of EIPA.

Under the terms of the settlement, the Bank will establish a fund of $500,000 from which class members who submit a valid claim form will receive reimbursement for the uncredited fees they were charged by the Bank for restraints imposed pursuant to the Exempt Income Protection Act ("EIPA").  Moreover, class members who incurred over-the-limit charges as a result of the restraint that are uncredited can also receive reimbursement by filing a claim.

In addition to the monetary compensation to the Class, the Bank has also agreed to provide enhanced access to EIPA exempt funds for all judgment debtors going forward. In addition to access at Bank branches during regular banking hours, after three months the Bank will provide access to exempt funds through ATM access following a telephone call to a Bank call center. Most importantly, after a six month implementation period, the Bank will allow automated payments ("ACH") and checks to be cleared paid using EIPA exempt funds. This will allow judgment debtors to be able to use the exempt funds in their otherwise restrained accounts and avoid consequences because of the inability to timely access exempt funds.

Given the uncertainty of the instant litigation with the Court having limited the damages available to class members, the uncertainty over class certification, summary judgment and the trial of this action on the merits, and the likelihood that any victory would likely engender lengthy appeals, Plaintiff believes that the proposed settlement is in the best interests of the class.

The parties' agreement is memorialized in a Settlement Agreement dated December 28, 2015 (the "Settlement Agreement") which is attached to the accompany Declaration of G. Oliver Koppell as Exhibit A. The Settlement Agreement contains the following exhibits, which are also being submitted for consideration and preliminary approval:

- Preliminary Approval Order;

- Notice;

- Postcard Notice;

- Publication Notice;

- Proof of Claim form; and

- Final Approval Order.

The parties also wish for the Court to resolve two disputes pertaining to the settlement. First, Plaintiffs believe that postcard notice of the settlement is sufficient to provide class members notice of the Settlement Agreement.  A postcard notice to class members which notifies them of the settlement and directs them to the settlement website for more information will minimize the expenses of notice which are being paid from the settlement fund.  The Bank believes that a longer form notice is required.

Second, the Bank believes that publication notice of the settlement is required.  Plaintiffs believe this form of notice to be unnecessary as all class members are receiving direct mail notice of the settlement and the few who cannot be reached by this method are unlikely to notice an advertisement that happens to run in a periodical.  Moreover, it is unlikely that any single periodical covers all of New York State sufficiently.  This is just an additional expense from the settlement fund that need not be paid.

Accordingly, the parties respectfully request that the Court enter the proposed Preliminary Approval Order that, inter alia, would: i) preliminarily approve the Settlement Agreement; ii) determine and approve the notice plan to distribute notice of the Settlement Agreement to Class Members; iii) provide the opportunity for any Class Member to be excluded from the Class; iv)  approve the Proof of Claim form; v)  approve  RG2 Claims Administration LLC as the Settlement Administrator; and vi)  schedule the submission of memoranda and comments in favor or opposition to the Settlement Agreement, as well as with respect to attorney's fees and expenses.

<u>History of the Case</u>

As this Court is already greatly familiar with the facts and procedural history of this case, Plaintiff will not repeat the facts at length here and instead offer a brief summary as set forth

3

Paragraphs 1.9, 1.10 and 1.11 of the Settlement Agreement.  In this action, TD Bank moved to dismiss Plaintiffs' Amended Complaint, which motion was granted on March 2, 2012.  Plaintiffs thereafter appealed that decision to the United States Court of Appeals for the Second Circuit, which certified the appellate issues to the New York State Court of Appeals.

On November 21, 2013, the New York Court of Appeals held that there was no right to bring a plenary action for violations of EIPA, or assert common law causes of action for its violation, but the Court did hold that claims for damages could be made through the special proceeding mechanisms of Article 52 of the CPLR.  On December 18, 2013, the Second Circuit remanded the case to the District Court to permit Plaintiffs leave to amend the Complaint.

On April 17, 2014, the Court denied Plaintiffs' motion to file a Second Amended Complaint, while granting Plaintiffs leave to move to amend consistent with the Court's order. As part of its determination, the Court limited the monetary damages that Plaintiffs and the putative class could seek from the Bank.  On February 3, 2015 the Court granted Plaintiffs' motion for leave to file a Second Amended Complaint and the Second Amended Complaint was filed on February 4, 2015.  The Bank answered on March 13, 2015.

After the death of named Plaintiff Claude Pain, the Court, on March 10, 2016, denied Plaintiff's motion for leave to file a Third Amended Complaint.  At the parties' request, on or about March 11, 2016 this action was referred to the United States Magistrate Judge for settlement discussions.

In addition, on July 6, 2016, Plaintiffs filed a Complaint on behalf of Wilfred Bucknor and Arthemio Perez against the Bank alleging certain claims in addition to the claims set forth in the Second Amended Cruz Complaint.  On September 12, 2016 the parties requested an

extension of Defendants' time to answer the Complaint to allow the parties to complete settlement negotiations.

During the pendency of this matter, counsel for Cruz, Perez and Bucknor conducted an extensive investigation and thorough discovery concerning the claims and the underlying conduct, events and transactions alleged in the Complaints, including the following that were completed as of the date the agreement in principle to settle was reached:

(a)     Served and obtained TD Bank's responses to both individual and class interrogatories and requests for documents;

(b)     Review and analysis of 194,551 documents, representing 93,480 unique individuals, produced by TD Bank, including levy notices, exemption claim forms and correspondence for New York Customers of TD Bank, whose accounts were restrained or attempted to be restrained;

(c)     Obtained additional account statements for a random sample of New York Customers selected by a third party statistician; and

(d)     Deposed TD Bank's corporate representative concerning the claims asserted and TD Bank's procedures regarding EIPA.

Since April, 2016, the parties have been engaged in arms-length negotiations to resolve this matter.  This included several appearances before the magistrate judge, multiple private in-person meetings, the retention of a bank expert by Plaintiff to discuss the ways in which processing of exempt payments could be undertaken, a conference participated in by counsel for the parties and Plaintiff's retained expert, and multiple telephone calls and email correspondence regarding the terms of the Settlement Agreement, and multiple revisions to draft documents.

<u>Terms of the Settlement</u>

A.    <u>Certification of a Class</u>

For purposes of the Settlement, the parties have agreed to the following definition of a

class:

> from EIPA's effective date to the date of the Preliminary Approval Order, all TD Bank
> Account Holders who are or were judgment debtors under New York law and whose
> accounts containing EIPA Exempt Funds were restrained, including those asserting
> claims that were or could have been asserted in the Actions for violations of EIPA, for
> example but unexclusively for:  failure to receive, maintain or mail timely EIPA notices
> and forms, or improper charges or fees, or improper aggregation of account balances to
> determine the amount of EIPA Exempt Funds, or providing improper, incomplete,
> inadequate types or methods of less than completely unfettered access to EIPA Exempt
> Funds, or improper internal controls, policies or procedure for EIPA compliance.

2.2.[1]

The class definition includes the putative class in the Perez action, which, for purposes of

settlement only, is consolidated with this action.  1.2.

Class members shall have the right to exclude themselves or object to the Settlement

following the sending of notice.  10.4, 10.6.

B.    <u>Monetary Payments and Distribution of Settlement Funds</u>

The Bank has agreed to pay $500,000 inti a Settlement Fund to settle the claims set forth

in the Actions.   Said money shall be held in an account maintained by a Settlement

Administrator.  3.1.  The Settlement Fund shall be used to pay the costs of administering the

settlement, as well as paying claim payments to Authorized Claimants.  3.5.

In order to receive payment from the Settlement Fund, class members must submit a

claim form as set forth in Sections 5 and 6 of the Settlement Agreement.  The Settlement

Administrator shall review and approve the claim forms.  6.3, 6.8.  Rejected proofs of claim may

---

[1] Numerical references are to sections of the Settlement Agreement, attached as Exhibit A to the Declaration of G.
Oliver Koppell.

be remedied through a process set forth in the Settlement Agreement.  See e.g. 6.6, 6.7, 6.9-6.16. Rejections of claim forms are based on inaccurate or incomplete information provided.  6.5, 6.6.

After the determination by the Settlement Administrator regarding the claims, the Bank will have an opportunity to challenge the approval of any Claim Form with any disputes to be ultimately resolved by the Court.  Section 7.

Claimants shall be paid following the payment of fees for the Settlement Administrator. 8.2.  Each authorized claimant shall receive $125 representing any Uncredited Restraint Fee imposed by the bank, as well as either the amount of overdrafts charged by the bank related to the restraint, if proof of such fees are submitted, or $20 if no proof of is submitted.  8.4.  If there are insufficient funds to pay all claiming class members the full amount of their claims, they will receive pro-rata shares of the funds.  8.5.  Residual funds, or undeliverable or un-cleared funds, or unpaid funds, shall be paid to the Bank.  8.3, 8.10, 8.11.

      C.      Enhanced Access to EIPA Exempt Funds

In addition to the monetary payment, the Settlement Agreement also calls for substantial changes in practices in the way the Bank handles judgment debtors' access to EIPA exempt funds.  As an initial matter, judgment debtors may withdraw EIPA Exempt from any bank branch during normal business hours.  12.2(a).  Subsequently, within ninety days of the entry of judgment, the Bank will allow judgment debtor customers ATM access of exempt monies following a call to a toll free number connected with a Bank call center, between the hours of 8:00am and 6:00pm Eastern on Monday through Friday and between 8:30am and 3:00pm Eastern on Saturdays.  12.2(b).  This will allow access to exempt monies at thousands of locations worldwide.

Most importantly, within six months of entry of judgment in this matter, the Bank will manually review checks or ACH payments written on restrained accounts with EIPA exempt funds where sufficient exempt funds are available to cover those payments and process ad pay te payees of such transactions with any exempt funds.  12.2(c), (d).  The Bank has agreed to revise the transmittal letter it sends to judgment debtors to reflect these changes as these changes become available.  12.4.

The Settlement Agreement also creates an alternative dispute resolution mechanism to resolve disputes between the Bank and Class Members concerning the denial of access, unlawful restraints and resulting damages.  12.5.

D.    Release of Claims

In exchange for the settlement payment and the changes in practices, the Plaintiffs and the Certified Class will be providing the Bank with releases.  13.3, 13.4.  The releases cover all claims that could have been asserted in this action, or are based on or relate to any rights, duties and obligations under EIPA.  *Id*.  The Settlement Agreement contains an express denial and no admission of wrongdoing by the Bank.  Section 1.5, 1.7 and 16.

E.    Administration of the Settlement

Pursuant to Section 4.1 of the Settlement Agreement, the parties have agreed upon RG2 Claims Administration LLC as the Settlement Administrator.  This was done after soliciting bids from three different settlement administrators.   It should be noted that RG2 Claims Administration LLC has a corporate relationship with counsel for the Defendant.

As is set forth in Exhibit B to the Koppell Dec, RG2 Claims Administration LLC is an experienced Settlement Administrator with the ability to handle the administrative needs of this settlement.  The Settlement Administrator has estimated the costs of administering the settlement

8

to be $163,730 utilizing the Class Notice or $128,259 utilizing the Class Notice Postcard. Koppell Dec. Ex. C.  The Settlement Administrator used an estimate of 90,000 class members in arriving at the estimate.

The Bank has agreed to provide the Settlement Administrator with certain necessary information regarding each class member.  4.4.  The Settlement Administrator will update class members addresses as needed, 4.7, 4.8 and mail out the notice to them.  4.13.  The Settlement Administrator shall also prepare a settlement website in which class members can view the settlement agreement, notice, preliminary approval order, proof of claim and frequently asked questions.  4.10.  Class Members can also file claims by email by clicking on a link on the website.  Id.   Among its many duties, the Settlement Administrator will receive, review and approve or reject the claims, review requests for exclusion, record all objections erroneously sent to the Settlement Administrator, prepare required reports for the courts and make payments to class members.  4.14

F.      Class Counsel Fees and Incentive Awards

With respect to counsel fees, the parties have not come to any agreement, and any counsel fees awarded will not come from monies set aside for the Class.  Class Counsel has reserved the right to seek the reimbursement of counsel fees and costs from the Bank, and the Bank has reserved its right to object to any fee application.  11.2.  The Bank has agreed to pay any counsel fees awarded by the Court separate and apart from the settlement fund. 11.3.  The awarding of counsel fees is not a condition of the Settlement Agreement, 11.5, and shall not affect the finalization of the settlement or payment to the class.  11.6.  The Settlement Agreement cannot be challenged based on the Court's decision with respect to counsel fees, 11.7, and any

decision regarding such fees may be severed from the Settlement Agreement for purposes of an appeal.  11.8.

Plaintiffs will also seek service awards for the benefit of the Class Representatives.  Class Counsel will seek an award of $10,000 on behalf of Mr. Cruz, and $5,000 on behalf of Mr. Perez and Mr. Bucknor.  11.10.  The differences in amounts are based on the differing level of time spent litigating the dispute and claims, to date, by the Class Representatives.  The Bank has agreed to pay any Service Awards approved by the Court separate and apart from the Settlement Fund.  11.11.  The awarding of service awards is not a condition of the Settlement Agreement, 11.12, and shall not affect the finalization of the settlement or payment to the class.  11.13. The Settlement Agreement cannot be challenged based on the Court's decision with respect to Service Awards, 11.14, and any decision regarding such fees may be severed from the Settlement Agreement for purposes of an appeal.  11.15.

Argument

I.      Standard of Review

A district court may approve a settlement of a class action only if it determines that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *In re Sony Corp. SXRD*, 448 Fed.Appx. 85, 86 (2d Cir. 2011) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  That determination begins with a preliminary review by the court of the fairness of the proposed settlement agreement. *Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 430 (E.D.N.Y. 2010) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); see also Manual for Complex Litigation § 21.632 (4th ed.).  The purpose of preliminary approval is to simply allow notice to be issued to the class and for class members to either object to or opt-out of the settlement. After the notice period, the Court will be able to

evaluate the settlement with the benefit of the class members' input.  *Flynn v. New York Dolls Gentlemen's Club*, 2014 WL 4980380, at *1 (S.D.N.Y. Oct. 6, 2014); see also *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *1 (S.D.N.Y. Sept. 3, 2013).

Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.  *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. See, e.g., *Hadel et al. v. Gaucho, LLC*, 2016 WL 1060324, at *1 (S.D.N.Y. Mar. 14, 2016); *Chhab et al. v. Darden Restaurants, Inc. et al.*, 2016 WL 3004511, at *1 (S.D.N.Y. May 20, 2016); *Tiro v. Pub. House Invs., LLC*, , 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013). "[W]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (quoting *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).   "The preliminary determination of fairness 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.' " *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *3 (S.D.N.Y. Sept. 11, 2015).  "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the

settlement." *Gonqueh v. Leros Point to Point, Inc.*, 2015 WL 9256932, at *1 (September 2, 2015) (quoting *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013)).

Courts have discretion regarding the approval of a proposed class action settlement. *Flynn*, 2014 WL 4980380, at *1 (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)).  However, "in exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Gonqueh,* 2015 WL 9256932, at *1 (quoting *Yuzary*, 2013 WL 1832181, at *1; see also *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (while exercising its discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context").

"Before certification is proper for any purpose-settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); see *also In re Am. Int'l Grp., Inc. Sec. Litig.* ("In re AIG"), 689 F.3d 229, 238 (2d Cir. 2012). This applies even to conditional certification for settlement purposes only. See *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *5 (S.D.N.Y. Sept.11, 2015).

Rule 23(a) sets forth "threshold requirements" for any class action. See *In re AIG*, 689 F.3d at 238; see also Fed.R.Civ.P. 23(a). If a proposed class action satisfies these requirements, proceeding by a class action must also be authorized under Rule 23(b). See *In re AIG*, 689 F.3d at 238; see also Fed.R.Civ.P. 23(b). Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy of representation. *In re AIG*, 689 F.3d at 238 (citing Fed.R.Civ.P. 23(a)). Rule 23(b)(3), relevant here, provides that class certification is appropriate if common

questions predominate over individual questions and a "class action is superior to other available methods" of proceeding. Fed.R.Civ.P. 23(b)(3).

Once the court has made a preliminary determination that the settlement agreement is fair or within the range of reasonableness, Federal Rule of Civil Procedure 23(e) sets forth the procedures that must be followed:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

The Settlement Agreement proposed to this Court satisfies each of these criteria.

II.      The Proposed Settlement Agreement is the Result of Arm's Length Negotiations

Plaintiff Cruz began this putative class action more than six years ago.  At every turn it has been met with contentious litigation, with many Court rulings that have weakened the claims asserted.   This action has gone through multiple levels of appeals at the pleading stage, had limits placed on the potential for recovery on behalf of the Class and limits on the claims that can be asserted in this action.   The parties have engaged in substantial discovery, exchanging

document responses, interrogatory responses, requests for admission and conducting depositions. The outcome of such discovery has further informed the parties position on the propriety of settlement and the terms of settlement.

Moreover, the settlement took many months to negotiate and agree to and neither side has obtained everything it wanted.  The parties disagreed on liability, damages, and alternative solutions for an amicable resolution.  Despite these substantial differences, the parties persevered and were able to achieve a compromise in a way that addressed the concerns of each side, and reached a resolution that the parties believed to be fair, reasonable and adequate given the risks of further litigation.

III.     The Requirements of Rule 23 are Satisfied

To the extent that the Court must address the Class Certification factors at this stage, each of the factors are met in this case.

a.     Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of each member is impracticable." Fed.R.Civ.P. 23(a)(1).  Courts in the Second Circuit presume that the numerosity requirement is met if a putative class has forty or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

In this case, Defendant has produced more than ninety thousand files of judgment debtors who received restraints under New York law.  That there may be ninety thousand class members certainly satisfies the numerosity element of Rule 23.

b.      Commonality

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy the commonality requirement, class members' claims must "depend upon a common contention," and the common contention "must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Courts characterize the commonality requirement as a "low hurdle." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014) (internal quotation marks omitted). The commonality requirement "may be met even though individual circumstances differ, so long as class members' injuries derive from a unitary course of conduct*." Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 336 (E.D.N.Y. 2013) (citations and quotation marks omitted)

In this case, Plaintiff alleges a common course of conduct by Defendant in improperly restraining Plaintiff's and the Classes' accounts. Plaintiffs contend that in some instances restraints were imposed in the absence of having received the required EIPA Forms from judgment creditors. Plaintiffs also contend that in other situations, Defendant has restrained the funds without transmitting to class members the notices required under EIPA. In all situations where a restraint was imposed there is a $125 fee imposed on the judgment debtor, and frequently there are bank service fees for items such as bounced checks that are imposed despite the impropriety of the restraint. Moreover, there is no dispute that, because the Bank believed it is merely a garnishee conduit subject to statutory restraint obligations, including recognized rights of judgment creditors, all Class Members were not provided funds in the ordinary course of banking, limited to withdrawing funds at Bank branches directly. There is also no dispute that, because the Bank believed it is merely a garnishee conduit subject to statutory restraint

15

obligations, including recognized rights of judgment creditors, the Bank aggregated the funds in Class Members' accounts in order to determine exempt amounts.   The legality of such conduct raises sufficient common questions of fact to warrant class certification.

     c.      Typicality

Rule 23(a)(3) is satisfied when "the claims of the class representatives [are] typical of those of the class, and ... when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).   The central feature for typicality is that plaintiffs assert "that defendants committed the same wrongful acts in the same manner, against all members of the class," and the court looks "not at the plaintiffs' behavior, but rather at the defendant's actions." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012).   Like the commonality requirement, showing typicality is "not demanding" as it "does not require that the factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Dodona*, 296 F.R.D. at 267 (internal quotation marks omitted).

In this case, the claims of Plaintiffs Gary Cruz, Wilfred Bucknor and Arthemio Perez are typical of those of class members.   As alleged in the Second Amended Complaint in the Cruz matter and the Complaint in the Perez and Bucknor matter, it is undisputed that, because the Bank believed it is merely a garnishee conduit subject to statutory restraint obligations, including recognized rights of judgment creditors, all class members were not provided exempt funds in the ordinary course of banking and that their accounts were aggregated to calculate exempt amounts.   Moreover, Mr. Cruz denies receipt of the restraining notice, exemption notice and

exemption claim form from the Bank.  All were assessed, in whole or in part, the $125 fee assessed by the Bank for the restraint.  As such, their claims are typical of members of the class.

    d.    <u>Adequacy</u>

Adequacy under Rule 23(a)(4) consists of two requirements: "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted); see also *Dukes*, 131 S.Ct. at 2551 n. 5 ("[T]he [adequacy] requirement ... raises concerns about the competency of class counsel and conflicts of interest.");

As was established through his deposition, Plaintiff Cruz meets all of the requirements of adequacy.  Mr. Cruz is a graduate of Fordham University with double majors in math and English.  Koppell Dec. Ex. D at 17:19-23.  He subsequently received a master's degree in education in mathematics from Lehman College.  *Id*. at 18:1-4.  Mr. Cruz has been a teacher for ten years, working for six years at a private school and for the New York City Department of Education for four years.  *Id*. at 18:8-19-9.  Mr. Cruz is fully aware of the facts and allegations of his claim. *Id*. at  54:12-20, 62:23-63:11, 111:15-113:23.  Cruz is also aware of the requirements of EIPA and Defendants alleged violations thereof.  *Id*. at 68:6-20; 70:21-71:16; 106:21-107:13; 259:17-23.  Mr. Cruz has been involved in this litigation and is aware of its procedural posture and history.  *Id*. at 64:21-22, 84:15-21; 108:21-24; 109:5-11; 122:11-124:2, 185:11-15, 187:15-18; 200:17-202:6; 206:17-23.   Mr. Cruz further understands the meaning of his role as a fiduciary acting on behalf of the class, testifying that his understanding of his fiduciary duty is that he is responsible for representing the class to the best of his abilities and to put their interests first, even at the expense of an offer of judgment in his favor.  *Id*. at 59:5-11; 168:19-170:1.  Mr.

Cruz is also aware of class-wide settlement discussions that had taken place regarding this action.  *Id*. at 243:18-246:6; 247:1-247:18; 250:14-252:13; 254:4-257:4.     All of these facts satisfy the necessary criteria for Mr. Cruz to be approved as an adequate class representative.

While a similar factual record with respect to Mr. Bucknor and Mr. Perez has not yet been developed, there has been no argument that they are not qualified to represent the Class.  Both have met with Class Counsel on multiple occasions.  Mr. Perez has been involved in this action since his claims were sought to be added to the Cruz action, and he has participated in the drafting of that Complaint as well as the Complaint in the Bucknor and Perez action.  Mr. Bucknor has been involved in the drafting of his Complaint.  Both Bucknor and Perez have consulted with this office regarding the terms of the proposed settlement, and Cruz, Perez and Bucknor have all indicated their assent to its' terms.

With respect to the adequacy of proposed Class Counsel, as set forth in the accompanying declaration of G. Oliver Koppell, proposed lead class counsel G. Oliver Koppell has been an attorney for more than 40 years at some of the most pre-eminent firms in the county, as well as heading his own smaller firms.  Koppell Dec. ¶13.  Mr. Koppell also served as a member of the New York State Assembly for more than two decades during which time he chaired the Judiciary Committee.  *Id*.  Mr. Koppell thereafter served as Attorney General for the State of New York for one year.  *Id*.  He subsequently served as a member of the New York City Council for twelve years.  *Id*.  During his legal career Mr. Koppell has acted as lead counsel or co-class counsel in many cases, resulting in a substantial recovery by the classes.  *Id*..  Mr. Koppell is assisted in this matter by Daniel F. Schreck, who has been admitted to practice for more than eleven years and who has been involved in approximately ten other class actions during that time.  Koppell Dec. ¶14.

Plaintiffs also seek the appointment of Charles Juntikka as class counsel.  Mr. Juntikka is the principal of his law firm and is a highly experienced debtors' rights and bankruptcy attorney. He is well versed in the actions taken by judgment creditors and banks against judgment debtors. Koppell Dec. ¶15.  Mr. Juntikka is regularly involved with advocacy and legislation on behalf of debtors.  *Id.*

Moreover, as is set forth above, Class Counsel has aggressively litigated this matter that raises an issue of first impression.  Class Counsel has also reviewed a substantial amount of documents, provided discovery to Defendant, engaged in multiple rounds of settlement negotiations and taken and defended depositions.  *Id.*  Having filed several actions alleging violations of EIPA by various banks, Class Counsel has unique expertise in the statute at issue.

Plaintiff recognizes that this Court is concerned about a delay in this matter caused by Class Counsel not filing a proposed amended complaint in a timely manner, and has indicated that the delay may impact its ruling on adequacy of Class Counsel.  *Cruz v. TD Bank, N.A.*, 2015 WL 437393, at *3 (S.D.N.Y. Feb. 3, 2015).  As has been previously stated by Class Counsel, the delay in filing was due to the pressure to complete other legal obligations and violated no statute, local rule or Court imposed deadline.  While the matter may have been delayed several months, the action has proceeded zealously since then despite the fact that all discovery could not be completed by Defendant during the time period set forth by the Court.  Throughout the pendency of this matter Class Counsel pursued both a judicial determination of the claims presented, as well as negotiating a settlement.  The length of this action cannot be primarily attributed to the delay of Class Counsel, as there were numerous appeals from the initial decision dismissing the action that took years to be resolved, as well as multiple issues raised by this Court on remand.

e.    Predominance

To satisfy the predominance requirement, the issues subject to generalized proof and applicable to the class as a whole must predominate over, and be more substantial than, the issues that are subject to individualized proof. See *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), abrogated on other grounds by, *In re Initial Public Offerings Securities Litig*, 471 F.3d 24 (2d Cir. 2006); see also *Mazzei v. Money Sto*re, 288 F.R.D. 45, 59 (S.D.N.Y. 2012).  A court's inquiry is directed primarily toward whether the issue of liability is common to members of the class when taking into account both affirmative claims and potential defenses. *In re IndyMac Mortgage-Backed Securities Litigation*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) (internal quotation marks omitted).

In this case, generalized proof predominates over individualized issues.  The predominant questions are whether the Defendant adhered to the requirements of EIPA in ensuring that they received from the judgment creditors and then mailed to the judgment debtors the EIPA forms while charging a fee, and whether the Bank acted lawfully in limiting the manner of access to exempt funds.  Defendant will claim that they did adhere to EIPA's requirement as a matter of law and policy.  These common issues, predominates over any individual issues specific to the individual class members or Plaintiff.  As such, the predominance requirement is satisfied.

f.    Superiority

The superiority element of class certification requires that the class action be "superior to other methods" for resolving the dispute in question.  *In re Initial Pub. Offerings Sec. Litig*, 471 F.3d 24, 32 (2d Cir. 2006) (citing Fed.R.Civ.P. 23(b)(3)).  Rule 23(b)(3) requires that:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

A significant advantage of the class action form is that it permits recovery by smaller stakeholders, for whom it may not be sensible to maintain an individual action. See, e.g., *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008) (noting that where a case involves a "large number of potential claimants" and a "relatively small damage [amount] suffered by each claimant," it is "unlikely that individual plaintiffs would endure the expense of litigation in order to bring their claims");

In this case, there is little interest for class members to commence individual actions. This Court has limited the damages available of members of the Class to the fees improperly charged by the Defendant.  As such, each individual member of the Class does not have damages of more than several hundred dollars in bank fees.  Given this fact, it is unlikely that any individual class member will pursue his or her claims against the Defendant, nor is an attorney likely to represent them in pursuing such an action.  Moreover, it is unlikely that in any such individual action will policy-wide changes be made in how the Bank addresses restraints, as has been achieved under the terms of the Settlement Agreement.  As such, a class action is a superior method for resolving this dispute.

IV.     The Proposed Notice Plan Should be Approved

Fed.Rule 23(c)(2)(B) states that the:

court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The parties have agreed upon the direct mailing of notice to class members and the establishment of a website in order to provide Class Members with notice of the settlement as set forth in Rule 23(c)(2)(B). The text of the proposed Notices is attached to the Preliminary Approval Order as Exhibits 1-3. However, the parties dispute whether Publication Notice, Exhibit 3 is also required and whether the Class Notice, Exhibit 1, is required or a Class Notice Postcard, Exhibit 2, is adequate. Pursuant to the Settlement Agreement, the parties respectfully submit these issues to the Court for determination. 4.3.

### a.      Plaintiffs Do Not Believe That Publication Notice is Required

Under the terms of the Settlement Agreement, if Publication Notice is ordered it will be a onetime publication notice in the local media. 4.14(a). Plaintiffs do not believe that such Publication Notice is necessary. In this case, every Class Member will be receiving direct mail notice of the settlement of this action. Class Members' addresses will be updated through the national change of address database and skip-traced if necessary. The direct mailing of such notice is far more likely to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" as is required under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). A one-time publication notice such as is suggested here is nothing more than a "mere gesture" of notice that is not likely to provide any form of meaningful notice to members of the class. See e.g. *Corpac v. Rubin & Rothman, LLC*, 920 F.Supp.2d 345,

350 (E.D.N.Y. 2013).  Indeed, the Second Circuit has held that such notice, standing alone, does

not satisfy the requirements of due process.  *Hecht v. United Collection Bureau, Inc.*, 691 F.3d

218 (2d Cir. 2012).

If Publication Notice were ordered, it would only take money from the Settlement Fund

in order to pay the local media, instead of making those funds available to the Class.  Moreover,

given that there are no statewide newspapers of general circulation, it is unlikely to reach a large

percentage of the Class.  It is also unlikely that on one given day a substantial number of Class

Members will happen to read the newspaper, and pay attention to a particular legal

advertisement.  Given the cost and likely ineffectiveness of a one-time Publication Notice, and

he presence of direct mail notice to all class members, Plaintiffs do not believe that Publication

Notice is necessary or appropriate in this case.

   b.  The Class Notice Postcard is Adequate Notice

It is an accepted practice of the courts to inform class members of the proposed

settlement by use of a mailed post card directing class members to a more detailed online notice.

*In re Advanced Battery Technologies, Inc. Securities Litigation*, 298 F.R.D. 171, 182 n.3

(S.D.N.Y. 2014) citing *In re Mutual Funds Investment Litig.*, 2010 WL 2342413, at *6–7 (D.Md.

May 19, 2010); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935,

973 (N.D.Ill. 2011) (holding that postcard notice was "more than sufficient" despite not

providing detailed information about class members' options and deadlines because website and

claims administrator via phone did).

In this case, given the limited financial recovery to be had by the Class, increasing the

costs of notice by mailing the full Class Notice, is a waste of funds.  The Class Notice is nineteen

pages in length not including the Claim Form that will accompany it.  Mailing such a notice will

increase printing and postage costs substantially.   The proposal submitted by RG2 Claims Administration LLC confirms that the Class Notice Postcard is far less expensive.  Moreover, the language of the Class Notice Postcard is virtually identical to that of the Publication Notice which the Bank believes is a sufficient form of notice to Class Members.

Last, given the length and density of the Class Notice, it is likely that many Class Members will choose not to read the material.  The Class Notice Postcard is more likely to be read by Class Members.

Conclusion

For all of the foregoing reasons, the Parties respectfully request that the Settlement Agreement be granted Preliminary Approval and that the Preliminary Approval Order be entered, together with such other and further relief as this Court deems just, fair and equitable.

Dated: New York, New York
         January 13, 2017

Law Offices of G. Oliver Koppell & Associates

By:_____/s/_____
G. Oliver Koppell (GOK-4851)
Daniel F. Schreck (DS-7680)
*Attorneys for Plaintiffs*
99 Park Ave., Suite 1100
New York, New York 10016
(212) 867-3838

Charles Juntikka (CJ-4689)
Charles Juntikka & Associates, LLP
30 Vesey St., Suite 100
New York, New York 10007
(212) 315-3755