UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

GARY CRUZ,                        :     Case No.: 10-CV-8026 (PKC)

:

            Plaintiff,     :

:

      - against -     :

:

TD BANK, N.A.,         :

:

         Defendant.     :

-----------------------------------------------------X

:

ARTHEMIO PEREZ and WILFRED,   :

BUCKNOR,               :     Case No.: 16-cv-05375 (PKC)

:

           Plaintiffs,    :

:

      - against -     :

:

TD BANK, N.A.,         :

:

         Defendant.     :

-----------------------------------------------------X

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

Law Offices of G. Oliver Koppell & Associates
Attorneys for Plaintiffs
99 Park Ave., Suite 1100
New York, New York 10016
212-867-3838

**TABLE OF CONTENTS**

Page

Table of Contents                                                                 ii

Table of Authorities                                                              iii

Introduction                                                                       1

History of the Case                                                                2

Nature of the Case                                                                 6

Terms of the Settlement                                                            7

Argument                                                                           9

I.      The Settlement is Procedurally Fair                                        9

II.     The Settlement is Fair, Reasonable and Adequate                           11

        A.      The Complexity, Expense and Likely Duration of the Litigation     13
                Favors Settlement

        B.      The Reaction of the Class Favors Settlement Approval              15

        C.      The Late Stage of Proceedings and the Discovery Completed         16
                Favors Approval

        D.      The Risks of Establishing Liability and Damages, and the Risks    17
                of Maintaining the Class Action Through the Trial Favors
                Approval of the Settlement

        E.      The Ability of the Bank to Withstand a Greater Judgment Does      18
                Not Preclude Approval

        F.      The Settlement Falls Within the Range of Reasonableness for       19
                Approval

Conclusion                                                                        20

**TABLE OF AUTHORITIES**

Federal Cases                                                                    Page

Bano v. Union Carbide Corp., 273 F.3d 120 (2d Cir. 2001)                         12

Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174 (E.D.N.Y. 1999)          17

Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013)                        16

Charron v. Pinnacle Grp. N.Y. LLC, 874 F. Supp. 2d 179 (S.D.N.Y. 2012)          13, 15,
                                                                                 19

Charron v. Wiener, 731 F.3d 241 (2d Cir. 2013)                                  13

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)                  passim

Cruz v. TD Bank, N.A., 711 F.3d 261 (2d Cir. 2013)                              3

Cruz v. TD Bank, N.A., 742 F.3d 520 (2013)                                      3

D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)                            18

Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231 (E.D.N.Y. 2010)           passim

Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir 2000)             12

Gross v. Washington Mut. Bank, F.A., 2006 U.S. Dist. LEXIS 16975,               12
     (E.D.N.Y. Feb. 9, 2006)

Hickory Sec. Ltd. v. Republic of Argentina, 493 Fed.Appx. 156 (2d Cir. 2012)   14

In re Glob. Crossing, 225 F.R.D. 436 (S.D.N.Y. 2004)                            12, 15,
                                                                                 19

In re Ira Haupt & Co., 304 F. Supp. 917 (S.D.N.Y. 1969)                         18

In re Marsh & McLennan Cos., Inc. Sec. Litig., 2009 WL 5178546                  16
     (S.D.N.Y. Dec. 23, 2009)

In re Metlife Demutualization Litig., 689 F.Supp.2d 297 (E.D.N.Y. 2010)         16

In re PaineWebber Ltd. P'ships. Litig., 147 F.3d 132 (2d Cir. 1998)             12

In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104 (S.D.N.Y. 1997)           18

In re PaineWebber Inc. Ltd. P'ships Litig., 117 F.3d 721 (2d Cir. 1997)         18

In Re Sterling Foster & Co., 238 F. Supp. 2d 480 (E.D.N.Y. 2002)   12

In re Sterling Foster & Co., Inc., 2006 U.S. Dist. LEXIS 80861(E.D.N.Y. Oct. 31, 2006)   9, 14

Lowenschuss v. Bluhdorn, 613 F.2d 18 (2d Cir. 1980)   17

Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002)   12, 15, 18

McReynolds v. Richards-Cantave, 588 F.3d 790 (2d Cir. 2009)   9

Puricelli v. Republic of Argentina, 797 F.3d 213 (2d Cir. 2015)   14

Newman v. Stein, 464 F.2d 689 (2d Cir. 1972)   13

Protective Committee for Independent Stockholders of TMT Trailer Ferry. Inc. v.
    Anderson, 390 U.S. 414, 424-5 (1968)   13

Steinberg v. Nationwide Mut. Ins. Co., 619 F.Supp.2d 219 (E.D.N.Y. 2009)   14

Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc., 1989 WL 6377
    (E.D.N.Y. Jan. 4, 1989)   13

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005)   passim

Walsh v. Northrop Grumman Corp., 1999 WL 184654 (E.D.N.Y. March 25, 1999)   10, 12

Weil v. Long Island Savings Bank, 188 F. Supp. 2d 258 (E.D.N.Y. 2002)   17

Wright v. Stern, 553 F. Supp. 2d 337 (S.D.N.Y. 2008)   15

State Case

Cruz v. TD Bank, N.A., 22 N.Y.3d 61 (2013)   3

Federal Rule

Rule 23   Passim

Treatises

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002), §11.41   16

Manual For Complex Litigation, Fourth, § 21.634, at 322 (2004)   11

Plaintiffs Gary Cruz, Arthemio Perez and Wilfred Bucknor, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs unopposed motion for final approval of the class action settlement between Plaintiffs and the Class and Defendant TD Bank, N.A. (the Bank) pursuant to Fed.R.Civ.P.23(e).   All Settling Parties and Class Counsel consent to final approval of Settling Parties' settlement and no Class Member has objected to final approval.

## INTRODUCTION

After nearly seven years of litigation in a case of first impression, with the motion for class certification pending, the parties have reached a class action settlement that provides substantial redress for class members.   As with any settlement, neither side obtained the complete capitulation of the other.   Nevertheless, Plaintiffs and Class Counsel believe the proposed Stipulation and the Settlement contained therein achieves substantial benefits for the Class and all future judgment debtors.

For those class members who believe they were injured by the Bank by violating the requirements of the Exempt Income Protection Act ("EIPA") and were inappropriately charged fees by the Bank, they have had the ability to reclaim those fees from the Bank.   Exempt funds that were previously only available by visiting the Bank (and only with some difficult according to the testimony of Plaintiff Cruz) will now also be available by ATM and through ACH withdrawals and checks.   Importantly, this litigation also sets a very important controlling precedent allowing all judgment debtors to bring proceedings against their banks for violating EIPA.

The Settling Parties' agreement (the "Settlement") is attached to the Declaration of G. Oliver Koppell in support of the Motion for Preliminary Approval of the Settlement.  Dckt. #135

at Ex. A.  This Court granted preliminary approval to the Settlement on June 26, 2017, wherein the Court further approved the form and method of providing notice to the Class certified in this action.  Dckt. No. 141.  That Order further approved a Settlement Administrator to administer the settlement process, to communicate with the Class and to receive Class member claims.

Since then, over thirteen hundred Class members submitted claims to participate and receive refunds from the Settlement, while only seven Class members requested exclusion from the Settlement.  Not a single Class member objected to the Settlement nor to Class Counsel's statement of fees that it would seek in an application for attorneys' fees, which is made in a separate submission.  The Classes' response to the Settlement overwhelmingly endorses Class Counsel's view that the Settlement is fair, reasonable and adequate and, should be finally approved.

The Settlement was negotiated between experienced counsel over many years, with progress coming in fits and starts.  The earnest part of the negotiations took place with the assistance of Magistrate Judge Ellis.  Plaintiffs also hired a technical expert who discussed the Bank's operating system and the ability to allow access to exempt monies through ordinary banking methods while other monies remained restrained.  Settlement negotiations were undertaken in earnest after substantial motion practice and appeals, when discovery had largely been completed and after the parties had litigated numerous motions.

The Settlement is fair, reasonable and adequate, has complied in all respects with Rule 23(e) and the Orders of this Court, and should be granted final approval.

<u>HISTORY OF THE CASE</u>

An initial complaint was filed on October 21, 2010. Dckt. No. 1.  After a pre-motion letter, Dckt. No. 11, and an initial conference, an Amended Complaint was filed.  Dckt. No. 17.

Thereafter, the Bank moved to dismiss the action.  Dckt. Nos. 18-20, which Plaintiffs vigorously opposed.  Dckt. Nos 23-24.  This action was then dismissed in its entirety by this Court based on a finding that there was no private right of action for violation of EIPA.  Dckt. No. 26.

Years of appeals then followed.  Plaintiff appealed the dismissal decision to the Second Circuit.  Dckt. No. 28.  After briefing this issue before the Second Circuit, Exs. A and B[1], the Court certified the question to New York's Court of Appeals.  *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264–67 (2d Cir. 2013).  Plaintiffs thereafter briefed the issue before the Court of Appeals, Exs. C and D, receiving the assistance of Amici and being opposed by Amici.  After oral argument, the Court of Appeals issued an opinion answering the certified questions, finding that EIPA violations could be addressed in the form of a special proceeding.  *Cruz v. TD Bank, N.A.,* 22 N.Y.3d 61 (2013).  After answering the questions set forth in the reference by the Second Circuit, the Court of Appeals returned this action to the Second Circuit.  *Cruz v. TD Bank, N.A.,* 742 F.3d 520 (2013).  After an application by Plaintiffs, the Second Circuit remanded the case to this Court to permit Plaintiffs to amend their Complaint.  Dckt. No. 31.

Thereafter, Plaintiff moved to file a Second Amended Complaint, Dckt. Nos. 33-35, 45, which motion was opposed by the Bank.  Dckt. Nos. 40-42.  This Court denied the motion to file the proposed Second Amended Complaint because the remedies sought were found to be in excess of those permitted by the Court of Appeals.  Dckt. No. 46.  Plaintiffs thereafter filed a Motion for Reconsideration, Dckt. Nos. 48-49, 52, which the Bank opposed.  Dckt. No. 51.  The motion was granted in part and denied in part by this Court.  Dckt. No. 53.

---

[1] References to "Ex. _" refer to the exhibits attached to the Declaration of G. Oliver Koppell in Support of Plaintiffs' Motion for Final Approval of the proposed Class Action Settlement, the Payment of Attorneys' Fees and Expenses and the Awarding of Service Awards.

After this action was briefly dismissed because a new Second Amended Complaint had not been timely filed, Dckt. No. 54, and the Plaintiffs made a motion to vacate that dismissal, Dckt. Nos 59-62, 65-66, which the Bank opposed, Dckt. Nos. 63-64, Plaintiffs were granted permission to file a Second Amended Complaint, Dckt. No. 68, which Complaint was then answered on March 13, 2015.  Dckt. No. 71.

After a letter motion by Plaintiffs to set a discovery schedule, Dct. No. 72, the parties began discovery following the issuance of a Case Management Plan and Scheduling Order on June 4, 2015.  Dckt. No. 75.  In additional to the substantial documentation turned over by Defendants, Plaintiffs deposed an official of the Bank who could testify on the procedures followed by the Bank when served with a restraint.  Plaintiff Gary Cruz was also deposed.

During the pendency of the action then plaintiff Claude Pain died and Plaintiffs submitted a letter motion to extend time for discovery and to file a third amended complaint with a substitute plaintiff.  Dckt. No 77.  The letter motion was granted, Dckt. No. 78.  Plaintiffs thereafter moved to file a Third Amended Complaint, Dckt. Nos. 79-81, 87-89, which motion was opposed by the Bank.  Dckt. Nos. 85-86.  The motion for leave to file a Third Amended Complaint was denied.  Dckt. No. 92.  Plaintiffs subsequently moved for reconsideration, Dckt. Nos. 95-96, 102, which the Bank opposed, Dckt. No. 101, which motion was subsequently denied.  Dckt. No. 112.  The denial of the motion for a Third Amended Complaint prompted the filing of the separate Perez and Bucknor action.  Ex. E.  The Complaint in the Perez and Bucknor action set forth causes of action that this Court had refused to entertain, deeming them untimely.

The parties had begun discussing settlement in August of 2015, exchanging proposals and even having a direct meeting between counsel and representatives of the Bank.  Months later, on March 11, 2016, the parties who had been discussing settlement previously asked the

4

Court to refer the matter to a magistrate judge for a settlement conference.  Dckt. No. 93.  A settlement conference was held before the magistrate on April 12, 2016.  The parties thereafter continued negotiating directly and submitted regular status reports to the magistrate.  Dckt. No. 105.  A further telephonic settlement conference was held on June 9, 2016.

While negotiations were ongoing the Bank submitted its pre-trial filings to the Court, Dckt. No. 107, 108.  Plaintiff did so as well.  Dckt. Nos. 126-127.  Plaintiff also received leave to file a motion for class certification, Dckt. No. 114, and subsequently filed such a motion.  Dckt. Nos. 118-121.  The Bank's request to file a belated summary judgment motion, Dckt. No. 115, was denied.  Dckt. No. 117.

The parties informed the Court that they had executed a settlement term sheet on July, 21, 2016 and the Court granted the requested stay to fully draft and execute the settlement agreement.  Dckt. No. 129.  The parties thereafter engaged in lengthy and contested negotiations concerning the terms of the Settlement Agreement.  See e.g. Dckt. Nos. 129-132.  Finally a settlement agreement was entered into and a motion for preliminary approval submitted to the Court.  Dckt. Nos. 134-136.  Reflecting the parties disputes, even in this motion issues were left to be decided by the Court including the method of notice (was publication necessary?) and the manner of the notice (postcard vs. full notice).

A motion was also made to consolidate the Perez and Bucknor action with the instant case for the purposes of settlement.  Dckt. Nos. 137-139.  The motion to consolidate was granted, Dckt. No. 140, as was the motion for preliminary approval.  Dckt. No. 141.  That Order, among other things, approved the Settling Parties' proffered Notice of Class Action Settlement (the "Notice"), Proof of Claim Form (the "Claim Form") and a plan to provide notice of the Settlement to the Class.   The Preliminary Approval Order further appointed RG2 Claims

Administration LLC as the Settlement Administrator for this Settlement.   The Court initially scheduled the Fairness Hearing for April 28, 2017.   That date was adjourned by subsequent Order to June 15, 2017.  Dckt. No. 145.

As set forth in the accompanying Declaration of Melissa E. Baldwin the Director of Claims Administration for RG/2 Claims Administration, LLC, Ex. F, the Settlement Administrator, as directed by the Preliminary Approval Order, the Bank provided Class Member information to the Settlement Administrator.   Thereafter, the Settlement Administrator mailed the Notice and Claim Form (together the "Notice Packet") to 26,971 Class members on February 27, 2017.   When notices were retuned by the Postal Service, the Settlement Administrator re-mailed them.  The Settlement Administrator further provided notice to the Class by posting the Notice on a settlement website, www.bankfeessettlement.com.

When the Bank discovered that certain class members had inadvertently not received the notices, an application was made to the Court to mail them notices.  Dckt. No. 144.   Once approved, Dckt. No. 145, notices were promptly sent.  Dckt. No. 145; Ex. F.

During this period, Class Counsel spoke to nearly three hundred members of the class who had inquiries regarding the Settlement.   More than thirteen hundred class members submitted claims from the settlement, while only seven class members requested exclusion from the settlement.  No class members objected to the settlement.

Contemporaneous with the instant motion, Class Counsel is also submitting their motion for the approval of counsel fees, expenses and service awards.

<u>NATURE OF THE CASE</u>

Plaintiffs acknowledge the Court's familiarity with the nature of this case.  In sum and substance, Plaintiffs brought suit against the Bank alleging violations of EIPA.  The Plaintiffs

collectively alleged that restraints were imposed on exempt monies not eligible for restraint, that mandatory disclosures were not provided to judgment debtors, that fees were imposed by the Bank that could not be lawfully imposed and that judgment debtors were denied access to their exempt funds in the ordinary course.  The Bank either denied these allegations as a question of fact or denied that the practices were violations of EIPA.

<u>TERMS OF THE SETTLEMENT</u>

A detailed description of the Settlement was submitted to this Court by Class Counsel in their brief submitted in support of the motion to preliminarily approve the Settlement.  The Settlement Agreement and its exhibits were publicly filed for consideration by the Court and posted on a website for review by the Class.  This Court granted preliminary approval of the Settlement.  By way of review, the Settlement contains the following material terms:

- For purposes of the Settlement, the parties have agreed to the following definition of a class:

    from EIPA's effective date to the date of the Preliminary Approval Order, all TD Bank Account Holders who are or were judgment debtors under New York law and whose accounts containing EIPA Exempt Funds were restrained, including those asserting claims that were or could have been asserted in the Actions for violations of EIPA, for example but unexclusively for:  failure to receive, maintain or mail timely EIPA notices and forms, or improper charges or fees, or improper aggregation of account balances to determine the amount of EIPA Exempt Funds, or providing improper, incomplete, inadequate types or methods of less than completely unfettered access to EIPA Exempt Funds, or improper internal controls, policies or procedure for EIPA compliance.  2.2.

- The Bank has agreed to pay $500,000 into a Settlement Fund to settle the claims set forth in the Actions.  Said money shall be held in an account maintained by a Settlement Administrator.  3.1.

- In order to receive payment from the Settlement Fund, class members must submit a claim form as set forth in Sections 5 and 6 of the Settlement Agreement.  The Settlement

Administrator shall review and approve the claim forms.  6.3, 6.8.  Claimants shall be paid following the payment of fees for the Settlement Administrator. 8.2.   Each authorized claimant shall receive $125 representing any Uncredited Restraint Fee imposed by the bank, as well as either the amount of overdrafts charged by the bank related to the restraint, if proof of such fees are submitted, or $20 if no proof of is submitted.  8.4.

- Judgment debtors may withdraw EIPA exempt funds from any bank branch during normal business hours.  12.2(a).

- Within ninety days of the entry of judgment, the Bank will allow judgment debtor customers ATM access of exempt monies following a call to a toll free number connected with a Bank call center, between the hours of 8:00am and 6:00pm Eastern on Monday through Friday and between 8:30am and 3:00pm Eastern on Saturdays.  12.2(b).  This will allow access to exempt monies at thousands of locations worldwide.

- Within six months of entry of judgment in this matter, the Bank will manually review checks or ACH payments written on restrained accounts with EIPA exempt funds. Where sufficient exempt funds are available to cover those payments the Bank will process and pay the payees of such transactions with the exempt funds.  12.2(c), (d).

- The Bank has agreed to revise the transmittal letter it sends to judgment debtors to reflect these changes as these changes become available.  12.4.

- The Settlement Agreement also creates an alternative dispute resolution mechanism to resolve disputes between the Bank and Class Members concerning the denial of access, unlawful restraints and resulting damages.  12.5.

- In exchange for the settlement payment and the changes in practices, the Plaintiffs and the Certified Class will be providing the Bank with releases.  13.3, 13.4.  The releases cover all claims that could have been asserted in this action, or are based on or relate to any rights, duties and obligations under EIPA.  *Id*.

- Defendants have agreed to pay from the Settlement Fund all costs to administer the Settlement, to pay the Settlement Administrator and to distribute the Notice Packet to Class Members.  3.1.

- Defendants have agreed to pay Service Awards to each of the named Plaintiffs in the amount of $10,000 to Gary Cruz and $5,000 to Wilfred Bucknor and Arthemio Perez. Said monies shall not come from the monies put aside for the class.  11.10.

- Defendants have agreed to pay attorneys' fees and expense to Class Counsel in an amount to be determined by the Court.  11.3. The monies in payment of such fees and expenses shall not come from monies put aside for the Class.

<u>ARGUMENT</u>

I.    <u>The Settlement is Procedurally Fair</u>

Prior to assessing the substantive fairness of a class action settlement, the Court should determine that it was negotiated in a procedurally fair manner.  See *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010) (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009)).  "'A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *Dupler,* 705 F. Supp. 2d at 238 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  See also *In re Sterling Foster & Co., Inc.*, 2006 U.S. Dist. LEXIS 80861, *10 (E.D.N.Y. Oct. 31, 2006) ("A strong presumption of

fairness attaches to proposed settlements that have been negotiated at arms-length."); *Walsh v.*
*Northrop Grumman Corp.*, 1999 WL 184654, at *3 (E.D.N.Y. March 25, 1999) ("A strong
presumption of fairness in favor of the proposed settlement arises where: (1) the settlement is the
result of arm's length negotiations; (2) counsel is experienced; (3) sufficient discovery has been
conducted, thereby allowing counsel to act intelligently; and (4) the number of objectors is
relatively small.").

In this case, the Settlement is the result of arm's length negotiations after the completion
of discovery between experienced counsel.  As is set forth above, every element of the instant
litigation was hotly contested, including the settlement.  After prior sporadic negotiations that
had begun as far back as August, 2015, the parties began negotiating in earnest with the aid of a
magistrate judge in April, 2016.  It took many months thereafter to agree on a term sheet.  To aid
in the settlement talks, Class Counsel retained a banking expert who provided technical
information on how banking related software could be structured so as to permit exempt funds to
be available to depositors while restraining the remaining funds.

Once a term sheet was agreed upon, it took even longer for the parties to agree on the
language of the Settlement.  Even once the Settlement was agreed to, there remained issues to be
resolved by the Court including the method of notice (whether publication notice was required)
and the manner of notice (full notice versus postcard notice).  Indeed, the parties have not agreed
to a counsel fee and have entirely left it to the discretion of the Court to determine.  Given this
history, there can be no dispute that the parties engaged in arm's length negotiation.

With respect to the remaining factors, as set forth in the Declaration of G. Oliver Koppell
accompanying Class Counsel's fee application, Class Counsel are highly experienced litigators,
including in class action litigation.  Discovery was deemed to be complete in this proceeding,

and the Bank had provided Class Counsel with tens of thousands of client files, and the relevant witnesses had been deposed.  As such, the parties certainly had enough information such as to allow them to act intelligently in negotiating the Settlement.  Last, no Class Member has objected to the proposed Settlement.

In light of these factors, the proposed Settlement should be deemed procedurally fair.

II.     The Settlement is Fair, Reasonable and Adequate

Given the favorable response of the Class, the benefits provided by the Settlement, the fact that the Settlement is the product of vigorous advocacy and arm's length negotiation between informed counsel experienced in class action litigation, and that the risks of continued litigation outweigh the possible benefits such litigation could generate, this Court should grant final approval to the Settlement.  The Settlement will compensate all claiming Class Members for any fees charged by the Bank for processing restraints, as well as substantially change the manner in which the Bank administers restraints under EIPA.  The Settlement is fair, reasonable and adequate.

 "'At the fairness hearing, the proponents of the settlement must show that the proposed settlement is "'fair, reasonable, and adequate.'"  *Manual For Complex Litigation, Fourth*, § 21.634, at 322 (2004).  *Accord Dupler*, 705 F. Supp. 2d at 238 ("Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a class action settlement only after holding a hearing and finding that the settlement is 'fair, reasonable, and adequate.'  Fed. R. Civ. P. 23(e)(2).").

The standards for determining whether a class settlement is fair, reasonable and adequate are well-established in this Circuit:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery

completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ….

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir 2000). *See also,* Fed. R. Civ. P. 23(e); *Wal-Mart Stores*, 396 F.3d at 117.

In weighing the *Grinnell* factors, the Court should consider the public interest in settling complex class actions. *See In re PaineWebber Ltd. P'ships. Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (discussing "the strong judicial policy in favor of settlements, particularly in the class action context."); *Gross v. Washington Mut. Bank, F.A.*, 2006 U.S. Dist. LEXIS 16975, at *12-13 (E.D.N.Y. Feb. 9, 2006) ("the law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources."); *In Re Sterling Foster & Co.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002) ("Judicial discretion should be exercised in light of the general policy favoring settlement."); *Walsh*, 1999 WL 184654, at *2 ("It is well settled that the law favors settlement of disputed claims, particularly in the context of complex class actions."); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) ("The law favors settlements of class actions no less than of other cases.") (citation omitted).  Public policy favors settlement in class actions based on the reduction in litigation and related expenses and the risks inherent in maintaining class action litigation over long periods of time. *In re Glob. Crossing*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001). These considerations are particularly strong in this longstanding legal battle.

The test for the exercise of the Court's discretion in approving a settlement of a class action pursuant to Rule 23 is whether the settlement, taken as a whole, is fair, adequate and

reasonable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry. Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Approval of a proposed class action settlement is a matter of discretion for the district court. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972). However, a district court should not compare the proposed settlement against the potential recovery following trial. *Grinnell*, 495 F.2d at 462 ("Such procedure would emasculate the very purpose for which settlements are made."). *Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc*., 1989 WL 6377, at *1 (E.D.N.Y. Jan. 4, 1989) ("Court's task is not to engage in a trial of the merits nor to attempt to resolve all disputed facts, but to evaluate the relative strengths of plaintiffs' claims and come to an intelligent and objective decision."). It is also inappropriate to evaluate a class action settlement against a hypothetical alternative settlement.

An examination of the factors set forth in *Grinnell* demonstrates that the Settlement is fair, reasonable and adequate.

> A.    The Complexity, Expense and Likely Duration of the Litigation Favors
>        Settlement

Approving the proposed settlement would avoid a complicated and expensive further litigation, the outcome of which is arguably in doubt. As such, under this factor, the Settlement should be approved.

Where a proposed settlements result in a tangible present recovery without the risk and delay of trial, it strongly tips the scales in favor of the settlements. See *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196 (S.D.N.Y. 2012), aff'd sub nom. *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). Even when the subject of a class action is not overly complex, the expense and expected duration of the case in the trial and appeals courts can weigh in favor of settlement approval:

First, the complexity, expense, and duration of continued litigation likely would be considerable. … Continued litigation would necessarily involve substantial costs and a very uncertain result in a future complex and potentially lengthy trial with difficult liability issues.

*In re Sterling Foster & Co*., Inc., 2006 U.S. Dist. LEXIS 80861 at *14-15.  Cf. *Steinberg v. Nationwide Mut. Ins.* Co., 619 F.Supp.2d 219, 223 (E.D.N.Y. 2009) ("Although the underlying facts were not particularly complex, the procedural history of this case--including extensive motion practice, discovery, and complicated negotiations--reflects the considerable magnitude of this litigation.").

While the parties have already expended considerable effort litigating motions to dismiss and appeals of those decisions, as well as engaging in discovery and moving for class certification, if the Settlement is not approved the parties would engage in a protracted trial and likely appeal of both the trial decision verdict and numerous pre-trial decisions.  That process will be arduous, expensive and time consuming, and the results uncertain for Plaintiffs, the Class and the Bank.

In addition, as addressed in this Court's decisions in this action, a number of the issues in this case are complex and novel.  Among such issues already addressed by the parties and the Court involve the damages that can be obtained for an EIPA violation and whether injunctive relief is available.  While Plaintiffs and Class Counsel believe they would have ultimately prevailed on these issues, they acknowledge the complexity of the issues, many of which were decided by this Court in the Bank's favor.  These issues, along with the time and expense to litigate them to final adjudication, further endorse approval of the Settlement.

A further factor favoring settlement is when securing a judgment in these cases would require complex and burdensome evidentiary hearings to establish damages. *Puricelli v. Republic of Argentina*, 797 F.3d 213, 217 (2d Cir. 2015); *Hickory Sec. Ltd. v. Republic of*

14

*Argentina*, 493 Fed.Appx. 156, 160 (2d Cir. 2012) (summary order). Determining what fees each Class Member was charged, and what, if any, monies remain restrained would require an individualized analysis.  Given this need, a Class-wide settlement is the far better method for resolving these disputes.

B.    The Reaction of the Class Favors Settlement Approval

Out of the nearly 30,000 Class members who were sent the Class Notice, none objected to the Settlement.  Only seven Class members have opted out of the Settlement.  More than thirteen hundred class members have filed claims to take part in the Settlement.  Given this response, the reaction of the Class strongly favors settlement approval.

It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley*, 186 F. Supp. 2d at 362 (S.D.N.Y. 2002).  The notice and approval process is designed to solicit negative feedback regarding the proposed settlement. *Pinnacle*, 874 F. Supp. 2d at 197. "A certain number of opt outs and objections are to be expected in a class action." *Id*. (internal citations omitted).  A low number of objectors supports settlement approval. See, e.g., *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Glob. Crossing*, 225 F.R.D. at 457 (collecting cases in which settlements were approved over objections from 10–16% of class members).

In this case, more than thirteen hundred Class members filed claims to take part in the Settlement, while only seven sought exclusion and none objected.   A small number of objectors or opt-outs indicates an overwhelmingly positive reaction of the class to the Settlement. *Dupler*, 705 F. Supp. 2d at 239; *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that

the proposed settlement is fair, reasonable, and adequate."); see also *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (concluding class reaction was positive where none objected and eight of 1,735 members opted out).  The minimal number of opt-outs, particularly in contrast to the substantial number of claims filed, favors approval of the Settlement.  See *Dupler*, 705 F. Supp. 2d at 240 ("Given the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval.").  *Wal-Mart Stores*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002), §11.41, at 108; *In re Metlife Demutualization Litig.*, 689 F.Supp.2d 297, 333 (E.D.N.Y. 2010) (low numbers of objections and opt-outs endorse approval).

The response of the Class suggests that the Settlement is fair, reasonable and adequate.

C.    The Late Stage of Proceedings and the Discovery Completed Favors Approval

Where discovery has been conducted in the course of the litigation and not just for settlement purposes, this *Grinnell* factor weighs in favor of approving the settlement. See *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).

In this case, at the time the Settlement was entered into this action was nearing its conclusion.  After the lengthy motion practice and appeals concerning the Complaint, the parties had engaged in substantial document discovery.  The parties had also conducted the depositions of the relevant parties.

The lengthy duration of the litigation has provided counsel with sufficient time and information to assess the settlement options.  Only after the substantial conducting of discovery

16

and prior to a decision on Class Certification did the settlement negotiations take place in earnest.   The discovery and information obtained and reviewed by Class Counsel provided more than enough information to determine that the Settlement is fair, reasonable and adequate.   The comments of the *Becher* court, approving a class settlement, are equally apt here:

> In sum, counsel for both sides had full information about the strengths and weaknesses of plaintiffs' case and about the risks of further proceedings. The case was energetically and persistently litigated by experienced counsel, and the resulting settlement was reached on the brink of trial after arms-length negotiations before a respected neutral mediator.

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 181 (E.D.N.Y. 1999).

Class Counsel possessed sufficient information to negotiate a fair, reasonable and adequate settlement for the Plaintiffs and the Class and, as such, this Grinnell factor favors approval of the Settlement.

D.     The Risks of Establishing Liability and Damages, and the Risks of Maintaining the Class Action Through the Trial Favors Approval of the Settlement

In assessing the fairness, reasonableness and adequacy of a settlement, the Court should consider such factors as the "risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463 (citations omitted).   Although Class Counsel believes in the merits of Plaintiffs' claims, The Bank has denied wrongdoing for over six (6) years of litigation.   As it has represented on many occasions, the Bank believes it acted lawfully at all times and that Plaintiffs' claims are without merit.   Plaintiffs and Class Counsel acknowledge the uncertainties inherent in all complex, class litigation.   *Weil v. Long Island Savings Bank*, 188 F. Supp. 2d 258, 264 (E.D.N.Y. 2002) ("It is axiomatic that anything can happen at trial.").

Balanced against the certainty of recovery, the risk of no recovery or a substantially reduced recovery against the Bank after substantial additional litigation, the Settlement is fair

and reasonable.   See *Lowenschuss v. Bluhdorn*, 613 F.2d 18, 19 (2d Cir. 1980) (settlement approved where further litigation would have been "expensive and protracted" with no guarantee of any relief to class); *Maley*, 186 F. Supp. 2d at 364 ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation.").   Litigation inherently involves risks, both in establishing liability and damages. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), aff'd sub nom., *In re Painewebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997); see also *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.")

By virtue of the Settlement, Class members who submitted a valid claim will receive a 100% refund of the allegedly unlawful fees charged to them by the Bank as a result of the restraint.   Class members and future judgment debtors will also have vastly improved access to their exempt monies in their bank accounts.   Balanced against the risk of losing these benefits, and the expending substantial additional resources in this litigation, the Settlement should be approved.

   E.   <u>The Ability of the Bank to Withstand a Greater Judgment Does Not Preclude Approval</u>

It is not disputed that the Bank could withstand a recovery greater in amount than recovered by the Settlement.   Nevertheless, this factor does not factor against Settlement approval particularly given the relief afforded the Class. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (if the settlement does not exhaust defendants' resources, then "this factor, standing alone, does not suggest that the settlement is unfair.").

F.      The Settlement Falls Within the Range of Reasonableness for Approval

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of the law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking litigation to completion." *Wal-Mart*, 396 F.3d at 119. "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Pinnacle*, 874 F. Supp. 2d at 201 (citations omitted).

By virtue of the Settlement, Class Members who validly claimed to be charged fees will be getting their monies back and both Class Members and all customers of the Bank will receive a much easier method to access exempt funds.   Moreover, in light of these changes and establishment of a damages remedy for EIPA violations, it is unlikely that the Bank will transfer any exempt monies in violation of EIPA.

Class action settlements that secure less, and even substantially less, than the classes' overall injury can be approved.   *Grinnell*, 495 F.2d at 455.   This Settlement, which provides substantial relief to the Class should be approved, particularly in light of the strong and vigorous defense mounted by the Bank which would undoubtedly continue through class certification, trial and any appeal.   The certainty of the settlement amount "has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery." *In re Glob. Crossing*, 225 F.R.D. at 461.  Given the substantial recovery by the Settlement and the obstacles to achieving a greater recovery, the Settlement should be deemed fair and reasonable.

<u>CONCLUSION</u>

Wherefore Plaintiffs and the Certified Class respectfully request that the proposed Settlement be granted final approval, together with such other and further relief as this Court deems just, fair and equitable.

Dated: New York, New York
      May 25, 2017

Law Offices of G. Oliver Koppell & Associates

By:_____/s/_____
G. Oliver Koppell (GOK-4851)
Daniel F. Schreck (DS-7680)
*Attorneys for Plaintiffs*
99 Park Ave., Suite 1100
New York, New York 10016
(212) 867-3838

Charles Juntikka (CJ-4689)
Charles Juntikka & Associates, LLP
30 Vesey St., Suite 100
New York, New York 10007
(212) 315-3755