UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

GARY CRUZ,                       :      Case No.: 10-CV-8026 (PKC)
                                  :

              Plaintiff,       :

                                    :

            - against -     :

                                    :

TD BANK, N.A.,              :

                                    :

              Defendant.     :

------------------------------------------------------X

                                    :

ARTHEMIO PEREZ and WILFRED, :
BUCKNOR,                   :      Case No.: 16-cv-05375 (PKC)

                                    :

              Plaintiffs,     :

                                    :

           - against -     :

                                    :

TD BANK, N.A.,               :

                                    :

              Defendant.     :

------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND APPROVAL OF THE SERVICE AWARDS

Law Offices of G. Oliver Koppell & Associates
Attorneys for Plaintiffs
99 Park Ave., Suite 1100
New York, New York 10016
212-867-3838

i

## **TABLE OF CONTENTS**

                                                                                    Page

Table of Contents                                                                   ii

Table of Authorities                                                                iii

Introduction                                                                        1

Procedural History                                                                  3

Terms of the Settlement                                                             3

Argument                                                                            4

I.       Class Counsel is Entitled to the Reimbursement of Attorney's Fees          4

         A.      Standard of Review                                                 4

         B.      Counsel Fees that Do Not Come from the Settlement are Entitled     6
                 to Deference

         C.      Counsel's Time and Labor Supports the Requested Award              7

         D.      The Litigation's Complexities and Magnitude Warrant the Fee        12
                 Award

         E.      The Litigation Risks Warrant the Grant of the Requested Award      13

         F.      The Quality of the Representation Supports the Requested Award      15

         G.      The Relationship of the Requested Fee to the Settlement Supports   18
                 the Award

         H.      Considerations of Public Policy Favor the Fee Award                20

II.      Class Counsel Should Be Reimbursed for Their Expenses in This Action       20

III.     The Requested Service Awards Should be Approved                            22

Conclusion                                                                          24

## TABLE OF AUTHORITIES

<u>Federal Cases</u>                                                        <u>Page</u>

Babcock v. C. Tech Collections, Inc.,                                      19
2017 WL 1155767 (E.D.N.Y. March 27, 2017)

Beckman v. KeyBank, N.A.                                                   20
293 F.R.D. 467 (S.D.N.Y. 2013)

Bezio v. Gen. Elec. Co.                                                     5
655 F. Supp. 2d 162 (N.D.N.Y. 2009)

Cowan v. Prudential Ins. Co. of America                                    19
935 F.2d 522 (2d Cir. 1991)

Cruz v. TD Bank, N.A.                                                       8
711 F.3d 261 (2d Cir. 2013)

Cruz v. TD Bank, N.A.                                                       8
22 N.Y.3d 61 (2013)

Cruz v. TD Bank, N.A.                                                       8
742 F.3d 520 (2013)

Cruz v. TD Bank, N.A.                                                       17
2015 WL 437393 (S.D.N.Y. Feb. 3, 2015).

Cruz v. Zucker                                                             16
2017 WL 1093285 (March 19, 2017)

Diaz v. Paragon Motors of Woodside, Inc.                                   19
2007 WL 2903920 (E.D.N.Y. Oct. 1, 2007)

Detroit v. Grinnell Corp.                                                  13
495 F.2d 448 (2d Cir. 1974)

Doe v. Unum Life Insurance Company of America                             17
2016 WL 335867 (S.D.N.Y. Jan. 28, 2016)

Dornberger v. Metro. Life Ins. Co.                                        22
203 F.R.D. 118 (S.D.N.Y.2001)

Dupler v. Costco Wholesale Corp.                                       Passim
705 F. Supp. 2d 231 (E.D.N.Y. 2010)

Fleisher v. Phoenix Life Insurance Company                                17

2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)

Goldberger v. Integrated Resources, Inc.                                     Passim
209 F.3d 43 (2d Cir. 2000)

In re Currency Conversion Fee Antitrust Litig.                              20, 22
263 F.R.D. 110 (S.D.N.Y. 2009)

In re Glob. Crossing                                                         16
225 F.R.D. 436 (S.D.N.Y. 2004)

In re Indep. Energy Holdings PLC                                            19
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)

In re Initial Pub. Offering Sec. Litig.                                     14
671 F. Supp. 2d 467 (S.D.N.Y. 2009)

In re Hi–Crush Partners L.P. Sec. Litig.                                    17
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)

In re Marsh & McLennan Cos., Inc. Sec. Litig.                              13
2009 WL 5178546 (S.D.N.Y. 2009)

In re Nissan Radiator/Transmission Cooler Litig.                           18
2013 WL 4080946 (S.D.N.Y. May 30, 2013)

In re Sony SXRD Rear Projection Television Class Action Litig.             6, 7
2008 WL 1956267 (S.D.N.Y. May 1, 2008)

In re Sumitomo Copper Litig.,                                               13
74 F. Supp. 2d 393 (S.D.N.Y. 1999)

In re Telik Sec. Litig.                                                     14
576 F.Supp.2d 570 (S.D.N.Y. 2008)

In re Visa Check/Mastermoney Antitrust Litig.                              13
297 F. Supp. 2d 503 (E.D.N.Y. 2003)

Johnson v. Brennan                                                         22
2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)

Luciano v. Olsten Corp.                                                    16
109 F.3d 111 (2d Cir. 1997)

Maley v. Del Global Technologies Corp.                                    13, 14
186 F. Supp. 2d 358 (2d Cir. 2002)

Masters v. Wilhelmina Model Agency. Inc.                                          5
473 F.3d 423 (2d Cir. 2007)

McBean v. City of N.Y.                                                        6, 7, 22
233 F.R.D. 377 (S.D.N.Y. 2006)

Merrill Lynch Tyco Research Sec. Litig.                                          15
249 F.R.D. 124 (S.D.N.Y. 1998)

Missouri v. Jenkins                                                             17
491 U.S. 274 (1989)

Mills v. Elec. Auto-Lite Co.,                                                    4
396 U.S. 375 (1970)

Pa. Pub. Sch. Emps.' Ret. Sys.                                               20, 21
318 F.R.D. 19 (S.D.N.Y. 2016)

Parker v. Time Warner Entm't Co.                                                22
631 F.Supp.2d 242 (E.D.N.Y. 2009).

Savoie v. Merchants Bank,                                                       19
166 F.3d 456 (2d Cir. 1999)

Shapiro v. JP Morgan Chase                                                       7
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)

Steinberg v. Nationwide Mut. Ins. Co.                                            6
612 F.Supp.2d 219 (E.D.N.Y. 2009)

Trustees of Eastern States Health and Welfare Fund v. Crystal Art Corp.         19
2004 WL 1118245 (S.D.N.Y. May 19, 2004)

Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.                                      4
396 F. 3d 96 (2d Cir. 2005)

Wilson v. Car Land Diagnostics                                                  19
2001 WL 1491280 (S.D.N.Y. Nov. 26, 2001)

Federal Rules

Rule 23                                                                     Passim

Rule 68                                                                         23

Plaintiffs Gary Cruz, Arthemio Perez and Wilfred Bucknor, individually and on behalf of the certified Class, and Class Counsel respectfully submit this Memorandum of Law and the accompanying Declaration G. Oliver Koppell ("Koppell Decl.") in support of Plaintiffs' and Class Counsel's motion for the payment of attorneys' fees and the reimbursement of expenses pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and Paragraph 11.2 of the Settlement Agreement ("Settlement").  Class Counsel also seeks approval of the payment of Service Awards to Plaintiffs.

<u>INTRODUCTION</u>

Class Counsel has litigated this action on a contingency basis for nearly seven (7) years against a bank defendant with substantial assets represented by a large defense firm.  In so doing, they undertook the risk that their substantial efforts of investigating and litigating this consumer class action might forever go uncompensated.  At the time this action was commenced in 2010, the Exempt Income Protection Act ("EIPA") was a relatively new statute which had not been interpreted to any degree by the Courts.  Class Counsel took a risk in bringing this action alleging violations of this statute.  Class Counsel further persevered in this litigation despite this Court, and two subsequent federal courts, finding that there was no private right of action for the violation of EIPA and having that determination overturned by New York's highest court.

To date, Class Counsel has collectively expended over eleven hundred professional hours, the end result of which was the Settlement Agreement reached with Defendant.  The Settlement Agreement resulted in the payment by Defendant of $500,000 into a fund to reimburse class members for fees that they were improperly charged in violation of EIPA and for settlement administration and class notice.  Most importantly, the Settlement Agreement has the added benefit of improving the Bank's future handling of EIPA exemptions, providing those in

the past who were denied access to exempt funds much easier access to exempt funds through ATM machines, and allowing checks and ACH payments against exempt funds to be credited. Under the present manner in which EIPA is administered by the Bank, exempt amounts are not available to be accessed by ATM cards, to pay checks or to process ACH payments.  As a result, the legislative purpose of allowing small depositors and individuals to continue to use their bank accounts is totally frustrated.  The settlement will permit Bank exempt amounts to be available to depositors as EIPA intends.   See Koppell Dec. Ex. Q.

Pursuant to Fed. R. Civ. P. 23(h) and the accepted Second Circuit standards for evaluating class counsel fee applications, Plaintiffs' counsel and Class Counsel respectfully request attorneys' fees equal to $467,437.50, Class Counsel's lodestar, as well as the lodestar of Charles Juntikka, Esq. and Paul C. Whalen, Esq.  This request is made in light of the successes achieved by Class Counsel in this litigation.  Recognizing that Class Counsel did not prevail on all claims, Class Counsel is not seeking a lodestar multiplier.  In addition, Class Counsel seeks reimbursement of $23,231.23 as expenses incurred in the litigation of this matter.  The requested fees and expenses are fair and reasonable.

EIPA by its terms conferred substantial benefits to poor and low income bank depositors. The legislative sponsors wanted to insure that depositors retained a minimum amount of money in their bank account, and had access to that money through the banking system.  However, the Bank denied its depositors these substantial benefits.  By bringing this action, Class Counsel established a remedy for the violation of depositors' rights and, in the Settlement, fashioned new procedures that will allow Class members and depositors access to their exempt monies and prevent them from having bounced checks or returned ACH payments.  These remedies are not

clearly set forth in the statute and this litigation provided them to the Class and future depositors of the Bank.

The Notice of Class Action and Settlement approved by this Court and mailed to over thirty-thousand Class members disclosed that Class Counsel may seek a fee award up to $495,000 and an expense award of $27,000.  Despite this notice, no Class member objected to either the Settlement or Class Counsel's fee.  In addition, the fee requested by Plaintiffs' counsel and Class Counsel will not reduce the Settlement refund to any of the Class members insofar as the entirety of any fees and expenses awarded by the Court will be paid directly by the Bank.  All of these factors speak to the propriety of awarding Class Counsel the requested fees.

PROCEDURAL HISTORY

Plaintiffs, their counsel and Class Counsel incorporate their discussion of the History of the Case this nearly seven (7) year lawsuit from their *Memorandum of Law in Support of Final Approval*, filed today in support of the Settling Parties' joint motion for final approval of the Settlement Agreement.

TERMS OF THE SETTLEMENT

Plaintiffs, their counsel and Class Counsel incorporate their discussion of the Terms of the Settlement from their *Memorandum of Law in Support of Final Approval*, filed today in support of the Settling Parties' joint motion for final approval of the Settlement.  As it pertains to Plaintiffs' counsel and Class Counsel's right to seek a fee, the Settlement Agreement permits counsel to seek an award of attorneys' fees from the Court.  The parties have in no way agreed on attorneys' fees, leaving the issue to be resolved by the Court.

In the Notice of Class Action Settlement, Plaintiffs' and Class Counsel disclosed their additional agreement to limit any application for an award of attorneys' fee to no more than

$495,000, and expense of no more than $27,000.  Even though no Class member objected to the fee award based on that Notice, Plaintiffs' and Class Counsel seek a lesser fee in the amount of $467,437.50, and $23,231.23 in expenses.  In the absence of any objection to a potential greater fee, there should be no argument that the Class objects to a lesser actual award.

Importantly, the approval of the attorneys' fees requested by Class Counsel and the reimbursement of their expenses will not reduce the recovery under the Settlement for any Class member, who will each receive 100% of the Bank fees they were charged for which they filed a valid proof of claim.  In addition, the requested attorneys' fees and expense reimbursement will not reduce or deny any of the substantial benefits of the changes in practices achieved as a result of the Settlement.

<u>ARGUMENT</u>

I.      <u>Class Counsel is Entitled to the Reimbursement of Attorney's Fees</u>

A.      <u>Standard of Review</u>

Attorneys' fees are recoverable where "the litigation has conferred a substantial benefit on the members of an ascertainable class."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970).  In the Second Circuit, courts may award attorneys' fees in class actions using either the percentage of the fund or lodestar (now "presumptively reasonable fee") methods.  *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F. 3d 96, 121 (2d Cir. 2005).  "Although litigants are normally expected to pay their own expenses, '[t]here is a salient exception to this general rule that applies where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class.'"  *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 242 (E.D.N.Y. 2010) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  Accordingly, "in a certified class action, the court may award

reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Where attorney's fees are awarded in class actions, a court can apply two methods to assess the reasonableness of the requested fee: the percentage method or the lodestar method. *Dupler*, 705 F. Supp. 2d at 242. "With the percentage method, the court sets as the fee some percentage of the common benefit fund. Alternatively, a court may calculate the presumptively reasonable fee (formerly the 'lodestar method'), where the court multiplies what it determines to be a reasonable hourly rate by the number of hours reasonably expended on the case." *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 167 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

In valuing the settlement, changes in procedures that benefit both class members and future depositors in the same positon must be valued even if such value cannot be precisely calculated.

Whatever method is used, the reasonableness of a fee award is governed by the so-called *Goldberger* factors: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *Masters v. Wilhelmina Model Agency. Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); see also *Dupler*, 705 F. Supp. 2d at 243.

In this case, Class Counsel respectfully requests the award of counsel fees of $467,437.50. This amount represents Class Counsel's lodestar, as well as the lodestar of Paul C. Whalen, Esq. Class Counsel is not seeking a lodestar multiplier in recognition of the fact that Plaintiffs and the class did not prevail on all their claimed causes of action, as no plenary or

5

common law causes of action for EIPA violations were allowed to be maintained, and certain requested remedies were not permitted.

Plaintiff has deducted from their lodestar calculation all time incurred from November 7, 2014 through February 3, 2015, when this Court dismissed and then reinstated, the instant cause of action due to a delay in filing a Second Amended Complaint[1].  Class Counsel has also not charged for time incurred in reviewing time entries and preparing the instant fee application. Class Counsel has reduced their rates to $100 per hour for all travel time, as well as time spent speaking with Class Members following the mailing of notice of the Settlement.  Under the *Goldberger* factors, the requested fees are entirely reasonable.

B.     Counsel Fees that Do Not Come from the Settlement are Entitled to Deference

Attorney's fees awards that will not affect the recovery of the class are looked upon favorably.  See e.g., *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219, 224 (E.D.N.Y. 2009) ("[T]he Court notes with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) ("[R]egardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class."); *McBean v. City of N.Y.*, 233 F.R.D. 377, 393 (S.D.N.Y. 2006).  In a case such as this where the requested attorneys' fees will be paid directly by the defendant, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."  *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231,

---

[1] Though the hours still appear on the timesheets for purposes of record keeping, the hourly rate for those entries has been reduced to zero so as not to increase the lodestar.

243 (E.D.N.Y. 2010) (quoting *McBean,* 233 F.R.D. at 392).   Where the amount of the attorneys'

fee will not affect the class recovery, this weighs in favor of finding the fee reasonable.   See

*Shapiro v. JP Morgan Chase*, 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014); *Dupler*, 705

F. Supp. 2d at 243; *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL

195267, at *15. Given that the fees sought herein will not come from the Settlement funds, the

requested fees are entitled to deference.

      C.     <u>Counsel's Time and Labor Supports the Requested Award</u>

      Attached to the Declaration of G. Oliver Koppell as Exhibit G are the contemporaneous

time records of the Law Offices of G. Oliver Koppell & Associates.   As those time records

reveal, from the commencement of this action through May 23, 2017, our office has spent more

than 1100 hours litigating this case.   The time and labor spent litigating this action is

commensurate with the difficulties faced in pursuing this action.

      This action has been pending for nearly seven years.   The scope of this litigation was

extensive, necessitating substantial initial briefing and research by Class Counsel.   Charles

Juntikka, Esq., an attorney with decades of experience representing clients struggling with debt

and a longtime advocate on their behalf, first brought forth the Bank's repeated violations of

EIPA and the injuries that caused to Class Members.  Class Counsel then investigated further and

brought suit against the Bank, filing a Complaint, Dckt. No. 1, and then an Amended Complaint.

Dckt No. 17.  Plaintiffs opposed Defendants motion to dismiss Plaintiffs' Amended Complaint.

Dckt. Nos. 18-25.  This action was then dismissed in its entirety by this Court based on a finding

that there was no private right of action for violation of EIPA.  Dckt. No. 26.

      Years of appeals then followed.  Plaintiff appealed the dismissal decision to the Second

Circuit.  Dckt. No. 28.  After briefing this issue before the Second Circuit, and oral argument, the

Court certified the question to New York's Court of Appeals. *Cruz v. TD Bank, N.A.,* 711 F.3d 261, 264–67 (2d Cir. 2013). Plaintiffs thereafter briefed the issue before the Court of Appeals, Koppell Dec. Exs. C-D, receiving the assistance of Amici and being opposed by Amici. After oral argument, the Court of Appeals overturned the findings of this Court finding that a right of action existed for EIPA violations in the form of a special proceeding. *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61 (2013). After answering the questions, the Court of Appeals returned this action to the Second Circuit. *Cruz v. TD Bank, N.A.*, 742 F.3d 520 (2013). After an application by Plaintiffs to remand, it was remanded to this Court to permit Plaintiffs to amend their Complaint. Dckt. No. 31.

Plaintiffs subsequently filed several motions to file a Second Amended Complaint, Dckt Nos. 33-35, 59-62, which motions were opposed by the Bank. Dckt Nos. 40-42, 63-54. This Court denied the first of these motions, Dckt. No. 46, because the remedies sought were found to be in excess of those permitted by the Court of Appeals, but granted the second motion. The Bank then answered on March 13, 2015. Dckt. No. 71.

The parties then began discovery. During discovery, Class Counsel investigated tens of thousands of restraint files and many documents provided by the Bank concerning their levy practices. Sampling by an expert retained by the Bank was also conducted in order to obtain the levy files of those Bank depositors who had fees assessed on their accounts. A deposition of named plaintiff Gary Cruz took place, as did a deposition of senior representative of the bank familiar with levy procedures. Class Counsel was assisted in this endeavor by Paul C. Whalen, Esq. an experienced class action attorney who has substantial familiarity both with electronic discovery and assisted in the sifting of discovery and electronic banking procedures, for purposes of settlement.

8

After the death of Plaintiff Claude Pain, Plaintiffs thereafter moved to file a Third Amended Complaint, Dckt. Nos. 79-81, which motion was opposed by the Bank. Dckt. Nos. 85-86. The motion for leave to file a Third Amended Complaint was denied. Dckt. No. 92. The Perez and Bucknor complaint was subsequently filed. Koppell Dec. Ex. E.

Thereafter on March 11, 2016, the parties who had been discussing settlement since August, 2015, asked the Court to refer the matter to a magistrate judge for a settlement conference. Dckt. No. 93. A settlement conference was held before the magistrate on April 12, 2016. The parties thereafter continued negotiating directly and submitted regular status reports to the magistrate. Dckt. No. 105. A further telephonic settlement conference was held on June 9, 2016. In addition, the parties met independently on several occasions, in addition to multiple telephonic negotiations. Class Counsel further retained the assistance of a banking expert Kenneth Gahre. Mr. Gahre both prepared a memorandum and met with the parties, including technical staff of the Bank regarding banking software and programs and the feasibility of allowing checks and debits to be credited against statutorily exempt funds, allowing customers to continue banking in their accounts with respect to exempt funds while maintaining a restraint on other funds. The availability of this relief was a strong bone of contention between the parties throughout the settlement negotiations.

While negotiations were ongoing the parties submitted pre-trial filings to the Court, Dckt. Nos. 107-108, 126-127. Plaintiff also filed a motion for Class Certification. Dckt. Nos. 118-121.

The parties informed the Court that they had executed a settlement term sheet on July, 21, 2016 and the Court granted the requested stay to fully draft and execute the settlement agreement. Dckt. No. 129. The parties thereafter engaged in lengthy and contested negotiations

concerning the terms of the Settlement Agreement. See e.g., Dckt. Nos. 129-132. Finally the Settlement Agreement was entered into and a motion for preliminary approval submitted to the Court. Dckt. Nos. 134-136. Reflecting the parties disputes, even in this motion issues were left to be decided by the Court including the method of notice (was publication necessary?), the manner of the notice (postcard vs. full notice) and Class Counsel fees.

Since preliminary approval has been granted Class Counsel has primarily addressed issues related to the effectuation of the settlement. Class Counsel has conferred with approximately three hundred class members regarding the settlement, their rights with respect to the settlement and how to submit a claim. Class Counsel has also addressed issues involved in implementing the settlement, such as the inadvertent failure to issue notices to all class members by the Bank, and issues arising from incomplete claim forms. Class Counsel has also prepared the instant fee application, as well as the brief seeking final approval.

This extensive history and activity is all supported by contemporaneous time records submitted by Class Counsel herewith. Koppell Dec. Exs. G (Koppell), M (Juntikka) and O (Whalen). All of the activities billed for were necessary for the maintenance of this litigation and effectuation of the settlement that benefits the Class.

By virtue of this litigation class counsel has accomplished many things. Class Counsel has established a right by bank depositors to obtain redress for a bank's violation of the Exempt Income Protection Act and to recover damages. Had this action not been brought and the motion to dismiss decision of this Court not been vigorously pursued on appeal, judgment debtors would have no rights against banks for violations of EIPA. In addition, Class Counsel received a refund for Class members of fees that they were unlawfully charged, if they so desired. The Settlement

also created a mechanism for class members additional EIPA based disputes with the Bank to be resolved in an expeditious manner.

Even more importantly, Class Counsel also achieved far greater access to exempt funds by depositors faced with a restraint.  Judgment debtors will now be able to withdraw exempt funds at ATM machines as well as at Bank branches.  Indeed, in addition to the difficulty Mr. Cruz suffered in having his exempt funds provided to him, other class members told us when they called to discuss the notice that they too had issues retrieving exempt funds from a Bank branch.  The ability to use an ATM machine, in conjunction with assistance with Bank personnel especially trained to address these concerns, should help in the release of the exempt funds.

In addition, Class Members and other debtors will no longer have ACH payments or checks bounce from their exempt funds.  They will be able to pay their regular bills in the ordinary course up to the statutorily exempt amount.  In so doing, the aims of the legislation will be accomplished in that Class Members and future debtors will be able to remain in the banking system and utilize their exempt funds in their Bank accounts.  They will also not incur penalties from the entities with which they do business for bounced checks, or late or missed payments. This is a substantial benefit for debtors who already are likely of limited means and need access to as much of their exempt funds as possible.

In light of all of the foregoing, the time and labor of Class Counsel warrants the award requested.

D.     The Litigation's Complexities and Magnitude Warrant the Fee Award

At the time this litigation was commenced, no federal or state Court had addressed the impact of EIPA to any great degree, and no Court had discussed the rights of a judgment debtor with regard to the violation of the statute.  Class Counsel stepped into uncharted waters in this litigation, bringing an action under a statute in which no remedy is explicitly prescribed for violations.  Moreover, unlike an entirely new statute that regulates conduct, EIPA constituted numerous modifications and new subdivisions of existing statutes and had to be analyzed in that context.

Evidencing the complexities of this litigation is the fact that all parties involved in this litigation were wrong in some respects.  The Bank believed that no remedies were available for EIPA violations, as did this Court.  Plaintiffs believed that statutory and common law remedies were available.  The Second Circuit deferred decision on this issue to the New York State Court of Appeals which found that remedies do exist under CPLR Article 52.  This decision is important both for Class Members and for all future judgment debtors in New York.  Indeed, this issue was so significant that amicus briefs were filed with the Second Circuit and the Court of Appeals on behalf of both sides to this litigation with regard to these issues.

Thereafter this Court, *sua sponte* in a decision of first impression, interpreted the Court of Appeals decision as to limit the damages and remedies available to the Class.  Class Counsel respectfully disagrees with this decision and believes that greater remedies are available.  However, insofar as that determination would not be available until after this matter is taken to final judgment and appeal, Class Counsel has agreed to a compromise on this issue.

The magnitude of this litigation is further reflected in the change of practices of the Bank.  The Bank is a large national bank with a substantial presence in New York.  Going forward

thousands of judgment debtors whose accounts will be restrained by the Bank in the future will have better and easier access to their exempt funds, and will avoid incurring penalties to third parties to whom they owe money.  This benefit is not readily quantifiable, but represents a substantial improvement in the quality of life for judgment debtors who previously had limited, if any access to their exempt funds, and undisputedly no access to those exempt funds through normal and customary use of their Bank accounts.  Given these facts, the requested award is appropriate.

      E.     <u>The Litigation Risks Warrant the Grant of the Requested Award</u>

The risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable attorneys' fees award.  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *18 (S.D.N.Y. 2009) (quoting *Goldberger*, 209 F.3d at 54). The Second Circuit is especially cognizant of the risks class counsel accept when they prosecute an action on a contingent fee basis:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when   successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  See also *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 372 (2d Cir. 2002) ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.") (citation omitted); *In re Visa Check/Mastermoney Antitrust Litig*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (fees awarded should serve as an "inducement for lawyers to make similar efforts in the future"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399

(S.D.N.Y. 1999) ("Class counsel not only undertook risks of litigation, but advanced their own funds and financed the litigation."). The public policy was summarized as follows:

> It is therefore imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Maley*, 186 F.Supp.2d at 374. See also *In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 511 (S.D.N.Y. 2009) (Finally, the court considers whether the fee awarded "adequately encourage[s] class counsel to continue bringing cases of merit."). The risk of success is to be measured from the time the case is filed, not with the benefit of hindsight. *Goldberger*, 209 F.3d at 55.

At the time this action was commenced, Class Counsel undertook considerable risk. There were numerous arguments why a right of action could not be brought for violations of EIPA. Nevertheless, Class Counsel took this case on a contingency basis. Class Counsel were faced with opposition by a large Bank with substantial resources who were represented by a large international law firm. Yet Class Counsel persevered. Class Counsel further persevered after this action was dismissed in its entirety, throwing into substantial doubt the ability of the Class to recover at all. Class Counsel further accepted the risks of a very limited financial recovery when the Court limited the damages and remedies available. Class Counsel also suffered substantial risk of having this case dismissed at the summary judgment stage and for class certification to be denied. Class Counsel took this case entirely on a contingency basis, and has litigated for nearly seven years with no guarantee of ever being compensated for their efforts.

In light of all of these risks assumed by Class Counsel, the requested award is appropriate. Unlike in many cases, Class Counsel is not requesting a lodestar multiplier but rather, in recognition of the incomplete successes achieved, only asking for their lodestar. See

e.g. *Goldberger*, 209 F.3d at 47 (The district court may in its discretion increase the lodestar by applying a multiplier based on factors such as the risk of the litigation and the performance of the attorneys); *In re Telik*, 576 F.Supp.2d 570, 590 (S.D.N.Y 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

      F.     The Quality of the Representation Supports the Requested Award

In assessing the quality of the representation, courts look to the "recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 1998). In this case, Class Counsel, a few small firms, has aggressively litigated this matter that raises an issue of first impression against a large national bank with a large international law firm as their counsel.

As set forth in the accompanying Declaration of G. Oliver Koppell, Class Counsel G. Oliver Koppell has been an attorney for more than 40 years at some of the most pre-eminent firms in the county, as well as heading his own smaller firms. Mr. Koppell served as Attorney General of the State of New York. Mr. Koppell also served as a member of the New York State Assembly for more than two decades during which time he chaired the Judiciary Committee. He subsequently served as a member of the New York City Council for twelve years. During his legal career Mr. Koppell has acted as lead counsel or co-class counsel in many cases, resulting in a substantial recovery by the classes. Mr. Koppell bona fides as a qualified and well respected advocate for the public well-being, as well as skill as an attorney are beyond dispute.

Mr. Koppell was assisted in this matter principally by Daniel F. Schreck, who has been admitted to practice for more than twelve years and who has been involved in approximately ten other class actions during that time. At various points in the course of the litigation, other law

clerks or junior associates, typically with one to two years of experience, also assisted with the litigation.

Plaintiffs also seek reimbursement of the fees of Charles Juntikka, Esq. as Class Counsel. Mr. Juntikka is the principal of his law firm and is a highly experienced debtors' rights and bankruptcy attorney.  He is well versed in the actions taken by judgment creditors and banks against judgment debtors, and indeed is the individual who brought the Bank's activities to light as violative of EIPA.  Mr. Juntikka is regularly involved with advocacy and legislation on behalf of debtors.  Mr. Juntikka's declaration and his billing records are attached to the declaration of G. Oliver Koppell as Exhibits L and M.

Plaintiffs also seek the reimbursement of the fees of Paul C. Whalen, Esq.  Mr. Whalen is an experienced class action attorney who assisted class counsel with addressing the substantial electronic discovery provided by the Bank.  In addition, Mr. Whalen has extensive history and familiarity with banking procedures and systems.  Mr. Whalen's efforts aided in settlement talks, as well as in the pursuit of this litigation.  Mr. Whalen's declaration and his billing records are attached to the declaration of G. Oliver Koppell as Exhibits N and O.

Moreover, it should be noted that in assessing the quality of class counsel's performance, the court also looks to the quality of defense counsel.  See *In re Glob. Crossing*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985)).   In this case, the Bank was very well defended by Duane Morris, who vigorously opposed Plaintiffs and the Classes claims at every juncture, and succeeded in getting many of Plaintiffs claims limited.

The rates charged by Class Counsel, $650 for Mr. Koppell, $600 for Mr. Juntikka, $375 for Mr. Schreck, $100-$200 for law clerks and junior associates, as well as $600 for Mr. Whalen,

are reasonable.  A reasonable hourly rate should align with the prevailing rates in the district in which the court sits.  *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997).  Therefore, "market rates, where available, are the ideal proxy for compensation."  *Goldberger*, 209 F.3d at 52.  The rates charged by Class Counsel align with prevailing rates in the Southern District of New York.  See e.g. *Cruz v. Zucker*, 2017 WL 1093285, at *3 (March 19, 2017) (approving rates of $675 to $375 for attorneys); *Doe v. Unum Life Insurance Company of America*, 2016 WL 335867, at *5-6 (S.D.N.Y. Jan. 28, 2016) (awarding fees of $600 per hour per partner and $355 for an associate); *Fleisher v. Phoenix Life Insurance Company*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding fees of $675 to $225 per hour); *In re Hi–Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving rates of $825 to $425 per hour).  Further demonstrating the reasonableness of the requested fees, the Law Offices of G. Oliver Koppell & Associates charges the same rates to fee paying clients.  *Doe*, 2016 WL 335867, at *4 (citing cases).  While the firm's billing rates may have changed during the pendency of the litigation, use of a firm's current rates at the time of the fee application is appropriate. *Missouri v. Jenkins*, 491 U.S. 274, 283-4 (1989).

Plaintiff recognizes that this Court is concerned about a delay in this matter caused by Class Counsel not filing a proposed amended complaint in a timely manner, and has indicated that the delay may impact its ruling on adequacy of Class Counsel.  *Cruz v. TD Bank, N.A.*, 2015 WL 437393, at *3 (S.D.N.Y. Feb. 3, 2015).  As has been previously stated by Class Counsel, the delay in filing was due to the pressure to complete other legal obligations and violated no statute, local rule or Court imposed deadline.  Dckt. Nos. 60-62.  While the matter may have been delayed several months, the action has proceeded zealously since then.  Throughout the pendency of this matter Class Counsel pursued both a judicial determination of the claims

presented, as well as negotiating a settlement.  The length of this action cannot be primarily attributed to the delay of Class Counsel, as there were numerous appeals from the initial decision dismissing the action that took years to be resolved, as well as multiple issues raised by this Court on remand.  Class Counsel is not seeking any fees for the time period in which the action was dismissed.

Overall, based on this factor, Class Counsel believes that the requested award should be approved.

G.     The Relationship of the Requested Fee to the Settlement Supports the Award

Class Counsel achieved a settlement for the class of $500,000.  While the requested fee award represents a substantial percentage of that amount, several factors warrant the payment of the full fee.

First, the fee award is not being paid from the Settlement funds, but rather separately from the Bank.  As such, the fee award will not impact the Settlement or detract from the monies paid to the Class.  There can be no claim that Class Counsel had a conflict of interest with the Class in seeking this amount, and indeed the parties have not agreed on the fee to be awarded Class Counsel.  The Bank can well afford to pay these fees.

Second, Class Counsel achieved a substantial benefit for the Class and indeed future judgment debtors beyond the cash component of the Settlement.  By virtue of the Settlement, the Class and future judgment debtors will have far easier access to, and usage of, statutorily exempt funds from the Bank.  Class members will also have an expedited method of achieving relief for claimed EIPA violations.  While this item is not quantifiable on a cash basis for computation of a percentage award, this fact did add substantial value to the settlement which is factored into a fee award.  See e.g. *In re Nissan Radiator/Transmission Cooler Litigation*, 2013 WL 4080946, at

*15 (S.D.N.Y. May 30, 2013) (fee award approved where the valuation of the settlement fund was not just based on cash component, but also based upon ongoing benefits).

Third, Class Counsel established a remedy for EIPA violations in the highest Court in New York State that is now recognized by law, with the possibility of damages against a party violating the statute.  Until this action was brought, no Court had recognized a remedy for EIPA violations.  This item too is not quantifiable on a cash basis for computation of a percentage award, but it does add substantial value to the settlement that is compensable in a fee award.

Fourth, courts in this circuit have long recognized that higher percentage awards are appropriate where the cash component of a settlement is low.  *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003); *Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767 (E.D.N.Y. March 27, 2017).  Moreover, In *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999), the Second Circuit affirmed the use of the lodestar approach where attorneys' fees were determined after settlement payment to class.  In this case, insofar as the cash component of the Settlement is relatively low, a higher award reflective of Class Counsel's lodestar is appropriate.

Last, in numerous other types of cases where the public good is enhanced by the bringing of the action, Courts will award attorney's fees that are far in excess of the monetary damages awarded in the underlying action, rejecting a proportionality requirement.  See e.g. *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522 (2d Cir. 1991) (civil rights statutes); *Wilson v. Car Land Diagnostics*, 2001 WL 1491280, at *2 (S.D.N.Y. Nov. 26, 2001) (GBL §349 claim); *Diaz v. Paragon Motors of Woodside, Inc.*, 2007 WL 2903920, at *7-8 (E.D.N.Y. Oct. 1, 2007) (TILA claim); *Trustees of Eastern States Health and Welfare Fund v. Crystal Art Corp.*, 2004 WL 1118245, at *6 n.3 (S.D.N.Y. May 19, 2004) (collecting cases where the fee award greatly

exceeded damages).   This action, which was brought for the benefit of indigent judgment debtors, merits similar consideration.

All of these factors warrant the granting of the requested fee award.

H.      Considerations of Public Policy Favor the Fee Award

For the reasons set forth above, public policy also favors the fee award.  Class Counsel took a substantial risk in bringing a litigation of first impression on behalf of judgment debtors who were being denied their rights to exempt funds.  Class Counsel established important new rights and remedies for violations of EIPA for all judgment debtors, provided a refund to the class, and achieved substantial further benefits to judgment debtors who are customers of the Bank who have their accounts restrained going forward.  Public policy favors rewarding such conduct with a substantial fee award, as such an award will encourage other attorneys to undertake similar actions.

Based upon the foregoing, Class Counsel's request for an attorney's fee award of $467,437.50, should be approved.

II.     Class Counsel Should Be Reimbursed for Their Expenses in This Action

Courts ordinarily allow counsel to recover reasonable unreimbursed expenses in class actions.  See *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 482 (S.D.N.Y. 2013).  Class counsel may be compensated for reasonable out-of-pocket expenses upon request.  *Pa. Pub. Sch. Emps.' Ret. Sys.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (citing *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009)).   The court must ensure that any requests are reasonable. Fed. R. Civ. P. 23(h).  When the expenses requested "reflect[ ] the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel

20

expenses, courts should not depart from the common practice in this Circuit of granting expense requests." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 318 F.R.D. at 27 (citations omitted).

In this case, Class Counsel seek reimbursement of expenses in the amount of $23,231.23. A true and correct copy of the schedule of expenses incurred by this office are attached to the Declaration of G. Oliver Koppell as Exhibit I.  The expenses of Paul C. Whalen Esq. are attached to the Declaration of G. Oliver Koppell as Exhibit P.  The expenses are largely routine, district and appellate court filing fees, printing and binding of the record and briefs on appeals to the Second Circuit and the Court of Appeals, travel costs, courier costs, and deposition transcript costs.  These expenses are each appropriate and compensable as necessary for the furtherance of the litigation.

It should be noted that Class Counsel has not charged for any copies in this case, though thousands of copies were made by our firm.  Our firm has also not charged for legal research expenses, such as Westlaw even though substantial legal research was needed to litigate this matter.  While other firms routinely charge for such expenses separate and apart from their hourly rates, my firm does not.

The single largest expense, of approximately $15,500, was for the expert assistance of Kenneth Gahre regarding banking procedures and systems.  A true and correct copy of Mr. Gahre's CV is attached to the Declaration of G. Oliver Koppell as Exhibit J and a true and correct copy of his hourly time entries is attached as Exhibit K.  Mr. Gahre issued a memorandum and conducted several conferences with the Bank, including and in person one in New Jersey with Bank technical personnel, addressing the Bank's ability to allow exempt funds to be available for ATM withdrawals, ACH transactions and for checks while still maintaining

the restraint. His assistance provided a substantial benefit to the class and future judgment debtors.

In light of the foregoing, Class Counsel's request for the reimbursement of fees incurred in the litigation of this action should be approved.

III.   The Requested Service Awards Should be Approved

Separate and apart from the settlement payments to the class, the Bank has agreed to pay service awards to the named plaintiffs in this action. Plaintiff Gary Cruz will receive $10,000 for his service, and plaintiffs Wilfred Bucknor and Arthemio Perez will each receive $5,000. These service awards are fair and reasonable and should be approved by the Court.

"The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Parker v. Time Warner Entm't Co.*, 631 F.Supp.2d 242, 279 (E.D.N.Y. 2009). Incentive awards of $45,000, $35,000, and lesser amounts are "within the range of what other courts have found to be reasonable, although on the higher end. *In re Currency*, 263 F.R.D. at 131; *McBean,* 233 F.R.D. at 391 (approving incentive awards ranging from $25,000 to $30,000 as "fall[ing] solidly in the middle of the range" of those approved "across a variety of class actions"). In *Johnson v. Brennan*, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011), the court approved $10,000 service awards from $440,000 settlement fund). Similarly, in *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124–25 (S.D.N.Y. 2001) (approving incentive awards of $10,000 and $1,500 for certain class members). Incentive awards that come directly from the defendant and not form the settlement available to the class are viewed with approval. *Dupler v. Costco Wholesale Corp.*, 705 F.Supp.2d 231 (E.D.N.Y. 2010).

Plaintiff Cruz has earned the service award.  Cruz has been working with Class Counsel for nearly seven years on this case, discussing the pleadings, motion practice, appeals and re-pleadings.  He provided discovery responses, prepared for and underwent a contentious day long deposition.  Cruz rejected an individual settlement offer made to him for $35,000 pursuant to Fed.R.Civ.P. 68, an amount greater than the service award, as that offer would not have provided any benefit to the class.  Mr. Cruz also conferred with Class Counsel during the settlement negotiations, approving the settlement.  Mr. Cruz is a full-time public school teacher whose time and efforts spent litigating this action should be rewarded.  His service award will in no way affect the settlement payment to the rest of the Class, and no class member has objected to the payment.

Similarly, plaintiffs Perez and Bucknor should receive the requested service awards. Both of them met with Class Counsel.  Mr. Perez participated in the drafting of the proposed Third Amended Complaint which, when not allowed in this action, became the Complaint in the Perez and Bucknor action.   Both have also conferred with Class Counsel regarding the settlement, and have approved the settlement.  Their service awards will in no way affect the settlement payment to the rest of the Class, and no class member has objected to the payments.

In light of the foregoing, it is respectfully submitted that the requested service awards should be approved.  See e.g. *Dupler*, 705 F.Supp.2d at 245 (E.D.N.Y. 2010) (approving incentive awards of $25,000 and $5,000 based on participation).

<u>Conclusion</u>

Wherefore, Plaintiffs and Class Counsel respectfully requests that the requested fee award, expense award and service award be approved by the Court.

Dated:  New York, New York
        May 25, 2017

Law Offices of G. Oliver Koppell & Associates

By:_____/s/_____
G. Oliver Koppell (GOK-4851)
Daniel F. Schreck (DS-7680)
*Attorneys for Plaintiffs*
99 Park Ave., Suite 1100
New York, New York 10016
(212) 867-3838

Charles Juntikka (CJ-4689)
Charles Juntikka & Associates, LLP
30 Vesey St., Suite 100
New York, New York 10007
(212) 315-3755

24