```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GARY CRUZ, et al.,

            Plaintiffs,

        v.                          10 Civ. 8026 (PKC)

TD BANK, NA,

            Defendants.

------------------------------x
                                    New York, N.Y.
                                    June 15, 2017
                                    2:00 p.m.

Before:

                    HON. P. KEVIN CASTEL

                                    District Judge

                         APPEARANCES

LAW OFFICES OF G. OLIVER KOPPELL & ASSOCIATES
     Attorneys for Plaintiffs
BY:  GABRIEL OLIVER KOPPELL
     DANIEL SCHRECK


DUANE MORRIS LLP
     Attorneys for Defendants
BY:  ALEXANDER BONO
     RYAN BORNEMAN
```

1                (Case called)

2                (In open court)

3                THE COURT:  Please be seated.

4                MR. KOPPELL:  I'm Oliver Koppell.  I represent
5    Mr. Cruz, Mr. Perez, Mr. Buchner and the preliminarily-approved
6    class.  Your Honor, I'd like to introduce also Dan Schreck, my
7    associate, who worked very hard on this matter.

8                THE COURT:  All right.  Good to see you both.

9                And for are the defendants?

10               MR. BONO:  Good afternoon, your Honor.  I'm Alexander
11   Bono know from Duane Morris.  And with me is my partner Ryan
12   Borneman.  Also here today are representatives of TD Bank:
13   Jean Day, senior counsel in the legal department; Colleen
14   Feinbloom, who is from the Deposit OCS Group; and we have also
15   invited Elizabeth Mintzer, who is a summer associate in my law
16   firm.

17               THE COURT:  Wonderful.  Welcome to you all.  That
18   would seem to me to indicate that there are no objectors
19   present in the courtroom.  Is anyone here objecting to the
20   settlement?  I don't hear anyone in response, and no objections
21   have been submitted to me.

22               Mr. Koppell, are you aware of any objections?

23               MR. KOPPELL:  No, your Honor.

24               THE COURT:  Same question for defense counsel.

25               MR. BONO:  Not aware of any objections, your Honor.

1          THE COURT:  All right.  Unless anyone has anything
2    they wish to say, I will proceed to the matter at hand.
3          Plaintiffs move for certification of the Class for
4    settlement purposes only and for final approval of the proposed
5    class action settlement and plan of allocation.
6          Separately, class counsel move for attorney fees of
7    $401,768.77 and for reimbursement of total expenses of
8    $23,231.23.  They also seek awards to one lead plaintiff of
9    $10,000, and $5,000 to each of the other two leads plaintiffs.
10         The nature of the claims and the procedural history
11   are well outlined in the prior opinions of this court.  The
12   initial class action complaint was filed on October 21, 2010.
13   This is, I believe, the oldest case on my docket.  Amended
14   pleading was filed March 14, 2011.  I had granted a motion to
15   dismiss; it was appealed to the Circuit; they certified the
16   question to the Court of Appeals.  And the Second Circuit,
17   after hearing from the New York Court of Appeals, affirmed a
18   dismissal of all claims but remanded to permit the plaintiffs
19   to endeavor to plead a new claim under Sections 5239 and 5240
20   of the CPLR.  The rest of the history again is all laid out in
21   the prior rulings of this court.
22         The parties began discussing settlement and exchanging
23   proposals in August 2015.  At the request of the parties, a
24   conference was held before Judge Ellis on April 12, 2016.  The
25   parties returned to pursuing the litigation while they were

1  also endeavoring to negotiate. There was another settlement
2  conference with Judge Ellis in June of 2016. I received
3  pretrial submissions from the parties in a motion for class
4  certification. The defendant also sought leave to file a
5  motion for summary judgment.
6      Ultimately, the parties informed Judge Ellis that they
7  had agreed upon a settlement. This was around July 21, 2016.
8  It was finalized, and the plaintiff moved for preliminary
9  approval.
10     January 24 the court granted a motion to consolidate
11 the Perez and Buchner actions with the Cruz action for the
12 purposes of settlement, and the court granted preliminary
13 approval.
14     The definition of the Class is as set forth in the
15 submissions of the parties, and I need not simply read from it,
16 but it's at paragraph 2.2 of the settlement agreement, and I
17 will refer to those individuals as class members.
18     First question is whether or not I should certify this
19 settlement class. The standards under Rule 23(a) are well
20 known, and I will just get right to them.
21     Numerosity is satisfied. It's presumed when a class
22 consists of 40 or more plaintiffs. And here there were just
23 under 30,000 potential class members notified of the
24 settlement. The court concludes joinder would be impractical,
25 and the numerosity requirement is satisfied.

1          As to commonality, in this case class members all
2    share common questions of law and fact because they are based
3    on the same alleged violations of the EIPA.  I conclude that
4    there are common questions of law and fact, and that
5    requirement is satisfied.
6          The Class representatives' claims are typical of those
7    alleged or shared with class members.  The lead plaintiffs
8    allege that they were denied access to exempt funds, assessed
9    unlawful fees in connection with restraints, and Cruz alleges
10   that he was not provided with the required disclosures and
11   claim forms.  I conclude typicality is satisfied.
12         Rule 2824 dictates that the adequacy of representation
13   consider whether or not the plaintiff's interests are
14   antagonistic to those of other class members and whether the
15   plaintiff's attorneys are qualified, experienced and able to
16   conduct litigation.
17         There is no indication, other than on one point --
18   which I will talk about later -- the request for a bonus
19   payment.  That's the only area where I see any divergence with
20   the interest of the Class member.
21         And while this was a hotly contested case, and there
22   were issues along the way where it's undeniable that the court
23   ruled in a manner different from that urged by counsel for the
24   Class or counsel for the defendants at times, but there is no
25   doubt here that class counsel is eminently qualified,

1    experienced and capable of representing the class.  He is a
2    distinguished former public servant, former Attorney General of
3    the State of New York, and someone who has had a long and
4    distinguished career at the bar.
5         The proposed class is ascertainable.  Courts have
6    found an implicit requirement of ascertainability and the
7    express requirements of Rule 23(a).  An identifiable class
8    exists if its members can be ascertained by reference to
9    objective criteria.  Here that can easily be done.
10        With regard to the 23(b)(3) criteria, questions of law
11   in fact common to the class must predominate, and a class
12   treatment must be superior to individual litigation.  I find
13   that the requirements are met here.
14        With regard to notice, I directed notice, and the
15   court approved the parties' proposed class settlement notice in
16   a February 10, 2017 order.  Notice packets were sent to 29,183
17   potential class members.  4,385 were returned by the Postal
18   Service as undeliverable.  There were forwarding addresses for
19   89, and the packets were sent to the updated addresses.
20   Settlement administrator was able to locate new addresses for
21   2,768 of the undeliverable packets, and there were 1528 for
22   which a new address could not be located.
23        There is also a website that went live in February
24   2017, including information and documents relating to the
25   settlement, which class members can view.

1          As of May 23, 2017 no class members objected to the
2    settlement, and only seven have requested exclusion.  The
3    deadline for objections has passed; it was April 28.  The
4    deadline for exclusions has passed.
5          So, I find that all of the requirements for certifying
6    the Class are met.  Rule 23(e) requires whether I consider
7    whether a settlement that would bind the Class is fair,
8    reasonable and adequate, and the standards are laid out by the
9    Circuit in Weinberger v. Kendrick and, of course, City of
10   Detroit v. Grinnell Corporation.  And I have considered the
11   Grinnell factors.  I will mention some of what I have
12   considered, although I have considered it all.
13         Here the presumption of fairness, adequacy and
14   reasonableness attaches because this was a genuine arms-length
15   negotiation between experienced capable counsel after
16   meaningful and thoughtful consideration of the merits of this
17   case.  This was not so much a case that turned on discovery.
18   It turned on legal concepts that were thoroughly briefed and
19   considered by the parties at great length in the various
20   proceedings that took place in this case.
21         And I have already noted Judge Ellis' role in bringing
22   the parties together and assisting in the negotiation, although
23   the ultimate deal was reached between the parties on their own.
24         I have considered the complexity, expense and likely
25   duration of the litigation.  Litigation has been going on for

1   seven years, and were the court to deny approval of the
2   proposed settlement, the parties would proceed to trial, likely
3   accompanied by post-trial motions and a lengthy appeal process.
4   The litigation could plausibly have continued for several more
5   years at great expense and consuming resources.
6        There were issues in this case that certainly were a
7   first impression, and there may well have been the need for
8   extended damage hearings in the case.
9        I have considered the reaction of the Class and, as
10  indicated, they haven't objected.
11       The parties did undertake some discovery. They
12  describe it as extensive discovery in this case, documentary
13  discovery. The parties deposed a representative from the bank
14  and also plaintiff Cruz.
15       There was a risk of no recovery or a substantially
16  smaller recovery, which I've also taken into account. There is
17  no dispute that the defendant could have withstood a greater
18  judgment, and so that is not really much of a factor here in
19  this case.
20       The court concludes that a proposed settlement
21  establishing a $500,000 settlement fund, along with certain
22  policy changes at the bank, is well within the range of
23  reasonableness. The case would have been hard fought and the
24  outcome not certain.
25       As indicated, in exchange for $500,000, the Class

1    members release all claims against the bank related to the
2    alleged violations of the EIPA.
3             I have examined the plan of allocation which provides
4    for the payment of $125 for any uncredited restraint fee.
5    Also, authorized claimants receive the actual amount of any
6    uncredited overdraft fees charged by the bank; and it's either
7    the amount of the fees or $20 if no statements are submitted.
8    And there are also specific changes which will be implemented
9    by the bank.
10            The settlement fund will be used to pay settlement
11   administration costs but not attorney fees.  The attorney fees
12   are going to be dealt with separately and paid for by the
13   defendant.
14            Class counsel moves for attorney fees in the amount
15   which I indicated at the outset.  The bank, who will be paying
16   the award, has not expressed an opposition.  Initially, class
17   counsel had asked for somewhat more, but they reduced their
18   request, and so the aggregate of attorney fees plus expenses
19   equals $425,000.  It in this case is based on Arbor Hill
20   factors, i.e. the lodestar, maybe less than the lodestar, but
21   rather than a percentage of the fund basis.
22            And I have looked at the Arbor Hill factors and the
23   Johnson factors, and here I find that the hourly rates were
24   reasonable:  $650 for Mr. Koppell and $375 for Mr. Koppell's
25   senior associate; $600 for Mr. Juntica, $600 for Mr. Whalen and

1    $100 to $200 for junior personnel.  They are within the range
2    of reasonable for attorneys practicing on a difficult case like
3    this in the Southern District of New York.  There is a
4    reduction here by Mr. Koppell for travel time as well as time
5    spent speaking to class members.  The hours spent look to me
6    upon my review to be reasonable, as are the expenses.  And so
7    the attorneys fee and expense is approved.
8             Now, lead plaintiff Gary Cruz seeks an award of
9    $10,000, while lead plaintiffs Perez and Buchner seek awards of
10   $5,000 each.  The bank has no objection to these awards so long
11   as they are taken out of this settlement fund.
12            MR. KOPPELL:  No, your Honor.  Excuse me, your Honor.
13   I think they agreed to pay them separately.
14            THE COURT:  Is that correct?
15            MR. BONO:  No, your Honor, I think they do come out of
16   the fund.
17            THE COURT:  That's what I read in the papers.
18            MR. KOPPELL:  I think that was an agreement.  Can we
19   have just a moment?  I.
20            Think we had a discussion of that.  My recollection is
21   that we agreed that you would pay them separately.  That's my
22   distinct recollection, but I may be wrong.
23            THE COURT:  Well, it's a moot point for the moment.
24            Lead plaintiffs undertook the selfless task of serving
25   as representatives for the Class, a fiduciary responsibility.

As this court wrote in Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, (S.D.N.Y. 2007), "Absent class members are entitled to repose confidence and trust in class representatives to pursue claims with diligence and refrain from proposing a settlement which is unreasonably low.  This competence derives in large measure from knowing that the class representatives stand in the same shoes as all other members of the class.  If the class does well, the class representatives will do well in the same proportion to others.  Payments to class representatives, while not foreclosed, should be closely scrutinized.  A differential payment may be appropriate in order to make a class representative whole.  The representative plaintiff may have lost wages, vacation time, commissions from sales because of time spent at depositions or other proceedings.  A balance must be struck so that a class representative does not view his prospect for rewards as materially different from other members of the class, yet is not disadvantaged by his service in pursuing worthy claims."

Class counsel reports that plaintiff Cruz has worked with class counsel during the entirety of the nearly seven year duration of this case.  He discussed pleadings, motions and appeals with class counsel, provided discovery responses and underwent a deposition and conferred during negotiations of the settlement.

Cruz rejected an individual offer of $35,000, which is

1    greater than the requested service award, because it would not
2    have provided any benefit to the Class.
3              Perez and Buchner reportedly met with class counsel
4    and conferred with class counsel regarding the litigation and
5    proposed settlement, and Perez participated in the drafting of
6    the proposed third amended complaint.
7              The work just described is that which any person
8    undertaking the task of class representative ought to expect.
9    Lead plaintiffs have not made a showing that they undertook any
10   tasks beyond those normally expected, nor have they
11   demonstrated that they incurred any expenses or lost any
12   commissions or wages as the result of their role as lead
13   plaintiffs.  Therefore, the application is denied.
14             And it does not matter whether the bank is paying the
15   award directly or whether or not it is paid out of the
16   settlement fund.  The problem is that it undermines the purpose
17   and intent of a class representative under Rule 23.
18             So, the class action settlement is approved.  The
19   attorney fees and expenses are approved.  The bonus payments to
20   the class representatives are denied.
21             Is there a proposed final judgment that somebody wants
22   to hand up?
23             MR. KOPPELL:  Your Honor, may I be heard on the class
24   service award?
25             THE COURT:  Weren't you heard in your briefing?  You

1   mean you want to reargue it?  Is that what you want to do?

2   　　　　　MR. KOPPELL:  Perhaps that's the correct appellation,

3   yes.

4   　　　　　THE COURT:  I will be happy to entertain a motion to

5   reconsider if you want to submit one.  You should read the

6   cases.  Let me give you some of the other cases for you to read

7   when you submit it.  Take a look at Judge Nickerson's decision

8   in Weseley at 711 F.Supp. 713; Varljen, which is 2000 WL

9   1683656.  And when you look at Silberblatt you will see a

10  collection of the cases decided on this issue up through the

11  date of that decision.

12  　　　　　MR. KOPPELL:  Your Honor, I'm not going to argue the

13  matter; I just want to clarify -- and I believe Mr. Bono will

14  confirm -- that the agreement was that the bank would pay this

15  not out of the settlement fund but separately and, therefore,

16  not burden the Class.

17  　　　　　THE COURT:  Correct?

18  　　　　　MR. BONO:  Correct, that it was going to be paid

19  outside, so I misspoke.

20  　　　　　THE COURT:  OK, that's fine.  That's fine.  It doesn't

21  alter the decision in any respect because, as I indicated, this

22  is about Rule 23 and the concern that a class representative

23  who stands or falls with the rest of the class is a

24  representative who will be motivated and incentivized to get

25  the very best resolution for that class because his outcome in

1	this case is the same as everybody else's.  He doesn't take his
2	from a separate pile and a separate amount than the people who
3	he represents.  That's the thought.
4	          Now, again, I looked at the record.  There did not
5	appear to be any evidence of lost commissions, lost sales, lost
6	wages or lost expenses, and so that's the reason for my ruling.
7	          So, is there a judgment somebody wants me to consider?
8	          MR. BONO:  We have a copy.
9	          THE COURT:  Do you want to hand it up?
10	          MR. KOPPELL:  We have received it, your Honor.
11	          THE COURT:  Pardon me?
12	          MR. KOPPELL:  We have received a copy.
13	          THE COURT:  Thank you, Mr. Koppell.
14	          MR. BONO:  Your Honor, with the court's permission,
15	the copy that we sent up still had some blanks in it because we
16	didn't know what your Honor would rule.
17	          THE COURT:  Go ahead.  Settlement hearing held on June
18	15.  The preliminary approval order was dated?
19	          MR. BONO:  January 26, 2017, your Honor.
20	          THE COURT:  All right.
21	          MR. BONO:  The next blank we are aware of, your Honor,
22	is paragraph 8, and it refers to an exhibit that we handed up.
23	          THE COURT:  Yes.
24	          MR. BONO:  And that would be Exhibit 2 would be the
25	number to be added in.

H6F7CRUC

1              THE COURT:  Thank you.
2              MR. BONO:  Then, your Honor, you would jump to
3     paragraph 14.
4              THE COURT:  And is that the 425 figure, or is that the
5     401 number?
6              MR. BONO:  That's the 425, your Honor.
7              THE COURT:  All right.  So it will be $425 even?
8              MR. BONO:  Correct.
9              MR. KOPPELL:  Perhaps it should say fees and expenses.
10             THE COURT:  I will write that in, and I think that's a
11    good suggestion.
12             MR. BONO:  Your Honor, given your ruling denying --
13             THE COURT:  Paragraph 16 would be out.
14             MR. BONO:  Paragraph 16 would be out.  And that's --
15             THE COURT:  And 17.
16             MR. BONO:  Correct.  And those would cover the blanks
17    in the order handed up.
18             THE COURT:  All right.  I'm going to do the deed.  I
19    want to extend my congratulations to plaintiffs counsel and to
20    defendants counsel for bringing this case to a just conclusion
21    and for their professionalism throughout this proceeding, and
22    so congratulations to all.  The case is closed.  We are
23    adjourned.
24             MR. BONO:  Thank you, your Honor.
25             MR. KOPPELL:  Thank you, your Honor.